GARHART v. UNITED STATES (two cases).
WARD v. SAME.
ADAMS v. SAME.

Nos. 3309, 3310, 3312, 3313.

Circuit Court of Appeals, Tenth Circuit.
Oct. 26, 1946.

Rehearing Denied Dec. 6, 1946.

Harry Seaton, of Tulsa, Okl. (John L. Ward, Jr., of Tulsa, Okl., and C. Arthur Anderson, of St. Louis, Mo., on the brief), for appellants.

Kenneth G. Hughes, Asst. U. S. Atty., of Sapulpa, Okl. (Whit Y. Mauzy, U. S. Atty., of Tulsa, on the brief), for appellee

Before HUXMAN and MURRAH, Circuit Judges, and BROADDUS, District Judge.

HUXMAN, Circuit Judge.

An indictment was returned against appellants Leon Garhart, Edith Mary Garhart, E. W. Ward, Clarence P. Adams, together with others, in the District Court of the United States for the Northern District of Oklahoma. Count 1 charged them with a conspiracy to violate Sections 3253, 2857, 2806, 2831, 2810, 2833, 2834, 2913, 2803 and 3321 of Title 26 U.S.C.A. Int.Rev. Code, and Section 223 of Title 27 U.S.C.A. In general, the object of the conspiracy was alleged to be an unlawful agreement among the defendants to engage in the business of distilling spirits without registering the stills; to carry on unlawfully such business without giving bond therefor for the purpose of defrauding the government of the tax on the spirits so distilled, to unlawfully remove distilled spirits on which the tax had not been paid to a place other than an authorized distillery; to unlawfully possess distilled spirits, the containers of which did not bear the strip stamps required by Section 2803; to carry on the business of wholesalers and retailers without paying the special taxes required therefor; to fail and refuse to keep the required records and refuse to post a wholesale liquor dealer's sign. It was charged that as a further purpose of the conspiracy they would import liquors from Illinois and Missouri into Washington County, Oklahoma, in violation of law.

While the indictment contains nine counts, various of these appellants are concerned only with the first five counts of the indictment. Count 2 charged Edith Mary Garhart, Leon Garhart and C. P. Adams, together with others, with carrying on the business of a distiller with intent to defraud the government of the tax due at the Swing Club near Bartlesville, Oklahoma. Count 3 charged the same three defendants, together with others, with making and fermenting mash fit for distillation of whiskey at a place other than a distillery duly authorized according to law. Count 4 charged the same defendants, together with others, with unlawfully possessing distilled spirits on which the tax had not been paid, and Count 5 charged Leon Garhart, Edith Mary Garhart and Clarence P. Adams, together with other defendants, with engaging in the occupation of wholesale liquor dealer in Washington County, Oklahoma, without having paid the special tax required for such a business. E. W. Ward was found guilty under Count 1. Leon Garhart was found guilty under Counts 1, 4 and 5. Edith Mary Garhart was found guilty under Counts 1 and 5, and Clarence P. Adams was found guilty under Counts 1, 2, 3 and 4 of the indictment.

Two assignments of error are urged for reversal. They will be considered in the following order: 1. The trial court should have sustained appellant's motion to quash the indictment and suppress evidence obtained under a search warrant. 2. The evidence was insufficient to sustain a verdict of guilty and a judgment of conviction, and that therefore the court erred in refusing to sustain the various timely motions made by the defendants to challenge the sufficiency thereof. While the second assignment of error challenges the sufficiency of the evidence to sustain the conviction on all five counts, appellants' brief concedes the sufficiency of the evidence to sustain a conviction under Count 5. Furthermore, all of the argument is directed to Counts 1 and 4. Apparently appellants have abandoned their attacks on Counts 2 and 3, and their brief will be so treated.

The first assignment of error urges the insufficiency of the indictment as a ground of reversal. This part of the assignment also is not stressed in the brief of appellants, nor was it alluded to in the oral argument before this court. The emphasis is entirely upon the alleged error of the trial court in refusing to suppress certain evidence obtained as a result of a search of the premises of some of the appellants. Apparently appellants have abandoned their claim that the indictment was legally insufficient, and no further reference will be made to that part of the assignment.

On July 29, 1945, government agents searched the Garhart home and obtained certain evidence, including a quan-

tity of whiskey, which was introduced and received in evidence at the time of the trial. The officers had a search warrant under which the search was made. Appellants Leon Garhart and Edith Mary Garhart objected to the introduction of this evidence at the time of the trial, and moved the court to suppress it. The point made is that the supporting affidavit for the search warrant was legally insufficient to support a search warrant. There are two reasons why appellants' position in this regard is not well taken. In the first place, their objections to the proffered evidence came too late. The search was made on July 29, 1945. The trial commenced March 6, 1946. Notwithstanding that these appellants were present at the time of the search and saw what the officers took and were given a receipt identifying the articles which were taken, they made no move to recover the property or to challenge the government's right to use it as evidence in the trial which they knew was to follow, until at the trial. It is well settled that objections to the use of evidence which it is claimed was illegally obtained, must be seasonably made or the right to object thereto will be lost.[1] Gouled v. U. S., 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, upon which appellants rely, is not to the contrary.. There the challenged evidence was secretly taken and the defendants objected to its introduction promptly and upon the first notice to them that the government was in possession thereof.

Neither is appellants' position that the supporting affidavit was legally insufficient to support a search warrant well taken. The affiant recites that he had good reason to believe that there was located on the premises (describing them) certain property used in committing a fraud upon the revenues in violation of the United States laws. The affidavit then recites numerous facts upon which this belief was predicated. Some of these are that the affiant saw Leon Garhart delivering nine 100-pound sacks of sugar to a black Ford pick-up, which he delivered to a point near Copan, Oklahoma; that he saw a black Chevrolet drive up to the premises and deliver cases believed to contain whiskey; and that he saw several 100-pound sacks of sugar in the truck at the time; that he smelled strong odors of fermenting mash emanating from the premises. Other facts and incidents which the affiant observed are recited in the affidavit.

Probable cause for the issuance of a search warrant exists where the facts and circumstances before the officer are such as to warrant a man of reasonable prudence and caution in believing that an offense has been committed.[2] Whether probable cause is present must be determined from the facts and circumstances in each particular case. Decided cases are helpful only in declaring the general rule, and are persuasive only insofar as they present similar facts. Without further elaboration, it is sufficient to say that the facts and circumstances recited in the affidavit are sufficient to establish probable cause and to support the issuance of the search warrant.

The remaining ground urged for a reversal is that the evidence was insufficient to sustain a verdict of guilty and judgment of conviction under Counts 1 and 4. Count 1 is the conspiracy count. All the appellants were found guilty under Count 1.

Following is a brief summary of the evidence upon which the government relied to sustain the conviction under the conspiracy count: In the fall of 1943 the defendant Clarence P. Adams rented and occupied the Swing Club, located seven miles south of Bartlesville, Oklahoma, under the fictitious name of J. W. Anderson, and secured the installation of certain public utilities at that location. Adams was definitely identified by witnesses as being present at the Swing Club from November 19, 1943, until March, 1944. Co-conspirator Ralph Davis was seen operating a "distill" under the water tower at the Swing Club. In the same room were

[1] Segurola v. U. S., 275 U.S. 106; 48 S.Ct. 77, 72 L.Ed. 186; Nardone v. U. S., 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Dunn v. U. S., 10 Cir., 93 F.2d 119, 117 A.L.R. 1302; U. S. v. Salli, 2 Cir., 115 F.2d 292.

[2] Carroll v. U. S., 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Dumbra v. U. S., 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032.

20 to 30 large wooden barrels. Leon Garhart, together with the witness Ware, made a trip to the Swing Club for the purpose of moving some whiskey about a week or two after Davis was seen operating the still. Again, about a week or two later, Leon Garhart and Ware moved eight or nine one-gallon jugs containing a white liquid, from the Swing Club premises to the home of Garhart where Ware hid some jugs "down there in the holler" on the instructions of defendant Garhart. There was no sign posted at the Swing Club indicating a distillery was located there. The defendants Adams, Paul Watkins, Olive Watkins, Ralph Davis, Marie Davis, and Leon Garhart met and conversed at the Swing Club during this period. During this same period Adams was seen around the Garhart home "quite a few times." Included in the activities at this period were the operations of defendant E. W. Ward in transporting and hauling large loads of whiskey to the Garhart premises, usually about daylight. The truck used hauled two to three hundred cases once a week and perhaps oftener, and at other times not as often. The truck was unloaded by Ware, Garhart and Ward. The cases were checked and recorded by Edith Mary Garhart and paid for by Edith Mary Garhart. These cases of whiskey were sold to different named individuals in lots of two to three cases by Leon Garhart, Edith Mary Garhart, and Ware. The person who occupied the Swing Club immediately following Adams' occupancy found twenty to twenty-five one-gallon jugs, marks on the floors of the tank house where a furnace had been, and a sack of corks. The place smelled like a keg house at a still, and the drain or sewer was stopped up with something having a sour odor. This succeeding occupant also observed residue on the riverbank nearby which looked like sour mash or corn chops. The evidence further disclosed that during May, June and July of 1945, during which period the Garhart premises were under observation by Alcohol Tax Unit representatives by the use of power binoculars, that the defendants Leon Garhart, Edith Mary Garhart, Paul Watkins, Olive Watkins and Ralph Davis engaged in much whiskey activity at the Garhart Tuxedo premises; that Edith Mary Garhart sold three cases at one time to Alexander, who paid her for the whiskey; that there was no poster indicating that a wholesale liquor business was being conducted on the premises; that on several occasions Ralph Davis appeared at the Garhart premises driving a heavily loaded car, entered the Garhart garage, worked inside with Garhart or Watkins, and emerged therefrom perspiring freely, and that on the last appearance of the conspirator Davis the agents seized twenty-three cases of whiskey in the Garhart garage. There was other evidence offered by the appellants which tends to controvert this testimony, but that is not recited because the weight of the evidence or which evidence was to be believed was a question for the jury, and our only concern is whether there is sufficient evidence to sustain the conclusions reached by the jury.

■ The essence of the conspiracy charged in Count 1 was the unlawful agreement of two or more persons to violate the law as therein charged.[3] Without such an agreement there can be no conspiracy.[4] It is not essential to the offense that there be a specific or formal agreement. As a matter of course, men who conspire to violate the law do not ordinarily reduce such an agreement to writing. They rather seek to keep it hidden and prefer to work in the dark. It is enough if the minds of the parties meet in a common understanding to do an unlawful thing or to do a lawful thing in an unlawful manner.[5]

3 Pietch v. U. S., 10 Cir., 110 F.2d 817, 129 A.L.R. 563; Hudspeth v. McDonald, 10 Cir., 120 F.2d 962; Beland v. U. S., 5 Cir., 100 F.2d 289; Marino v. U. S., 9 Cir., 91 F.2d 691, 113 A.L.R. 975; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L. Ed. 349, 16 A.L.R. 196.

4 Marcante v. U. S., 10 Cir., 49 F.2d 156; U. S. v. Ford, D.C., 58 F.2d 1029; Booth v. U. S., 10 Cir., 57 F.2d 192; Craig v. U. S., 9 Cir., 81 F.2d 816.

5 Pietch v. U. S., 10 Cir., 110 F.2d 817, 129 A.L.R. 563; Beland v. U. S., 5 Cir., 100 F.2d 289; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct.

From the very nature of the offense, the government very seldom can establish the existence of a conspiracy by direct and positive evidence, but is forced to rely on circumstantial evidence. It is sufficient if the circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men can conclude therefrom that an unlawful agreement exists.[6] The evidence narrated above, which the jury evidently believed, is sufficient to establish the existence of the charged conspiracy, and the connection of the appellants therewith.

The contention of the appellants that the testimony of the government tended to establish separate conspiracies is not well taken. There was testimony that unlawful operations were carried on at separate places. It is also true that not all of the appellants were placed at all of these places. But an examination of all the evidence sustains the government's position, which was evidently adopted by the jury, that all these operations were integrated parts of a common design. Neither was it necessary that all the conspirators be identified with each separate operation or place of operation.

Finally, it is urged that the evidence was wholly insufficient to sustain the convictions under Count 4. Count 4 charged appellants Edith Mary Garhart, Leon Garhart and Clarence P. Adams with possession of non-tax paid liquor at the Swing Club. Edith Mary Garhart was acquitted on this count, and the other defendants were found guilty. A brief summary of additional evidence not already detailed, tending to sustain the conviction under this count, is as follows: Melvin Ware testified that he worked for Leon Garhart in 1943; that he knew Adams and Ralph Davis and Jack Ward, that he saw these parties frequently at the Garhart place; that on one occasion he went to the Swing Club at the request of Mrs. Garhart to move some hay, but that the hay had been moved; that he went into the building under the water tank where he saw Ralph Davis. He also saw twenty or thirty large barrels and a still in operation; that he went back a second time with Garhart to move some whiskey; that he saw Adams there at that time; that they did not take back any whiskey with them on that occasion; that he went back yet again with Mr. Garhart; that they went into the tank house; that the still was gone but that there were eight or nine gallon jugs there containing a white liquid which Garhart put in a pick-up truck and took to the Garhart farm; that he put the jugs by an old tree-top in a wash east of the house, because he "figured that would be a good place for it." He further testified that Garhart told him to put them there in the "holler." There was also testimony that Paul Watkins, an associate of Garhart, who frequented the Garhart premises, sold nineteen gallons of nontax paid liquor to Anderson, after Anderson had phoned Phone Number 1587, which was Garhart's telephone number. Mack Kyle occupied the Swing Club after Adams, or J. W. Anderson, left. He testified that when he took possession he found twenty to twenty-five gallon jugs, a sack of corks, marks of a furnace on the floor; that the sewer was stopped up with what smelled like a keg house around a still, that the place smelled like a house "where they sour whiskey." All this is competent testimony to sustain a verdict of guilty on a charge of possessing nontax paid liquor. A careful examination of the record leads to the conclusion that there is no reversible error.

The judgment is accordingly affirmed.

172, 65 L.Ed. 349, 16 A.L.R. 196; Pettibone v. U. S., 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419.

[6] Telman v. U. S., 10 Cir., 67 F.2d 716; Reavis v. U. S., 10 Cir., 106 F.2d 982; Martin v. U. S., 10 Cir., 100 F.2d 490; Pietch v. U. S., 10 Cir., 110 F.2d 817, 129 A.L.R. 563.