Robert Gerald SMITH, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4653.

Supreme Court of Wyoming.

Dec. 16, 1976.

David B. Hooper, of Vidakovich & Pappas, Lander, for appellant.

V. Frank Mendicino, Atty. Gen., and Jerry M. Murray, Senior Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS, and ROSE, JJ.

GUTHRIE, Chief Justice.

Robert Gerald Smith was convicted in the District Court of Natrona County, Wyoming, of the crime of embezzlement, involving certain property belonging to the Wyoming Machinery Company. As a result of such conviction he was sentenced to a term of not less than one year nor more than eighteen months and prosecutes this appeal from that conviction and sentence.

The first issue raised by appellant is that the search warrant in this case was not supported by probable cause and that his motion to suppress should have been sustained. It must be explained that there are two search warrants involved here. The first was issued on September 24, 1974, in connection with a burglary of the J. C. Penney Store in Casper and authorized the search of the home of defendant and a Chevrolet car. This warrant was returned, showing nothing had been seized pursuant thereto. On September 26, 1974, the State filed another affidavit to secure the search warrant in question, which was directed at the same premises and recited that "in the lawful execution of a search warrant on the above premises on September 24, 1974" the officer had observed certain items which are the articles allegedly embezzled herein and upon which this conviction was based. The reference to the "lawful execution" is admittedly a reference to the search warrant issued in the J. C. Penney matter.

Prior to trial, defendant filed a motion to dismiss based upon the asserted contravention of the Fourth Amendment of the United States Constitution and Article 1, § 4, of the Wyoming Constitution. This motion directly attacked the sufficiency of the J. C. Penney warrant and contended that it was not based upon a proper showing of probable cause. With this we agree.

██ It is apparent that the sufficiency of the facts contained in the affidavits upon which the first warrant was issued is directly placed in issue because of this conclusory statement made by the officer to secure the warrant and in apparent recognition of the rule so clearly expressed in *United States v. Edwards*, 5 Cir., 441 F.2d 749, 750:

"It is well established that neither the evidence found in an illegal search, nor the knowledge acquired from such a search, can be used legally in enforcing the law. * * *"

In addition, see *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 416, 9 L.Ed.2d 441; *Peterson v. United States*, 8 Cir., 411 F.2d 1074, 1078, certiorari denied 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199; *Simpson v. United States*, 10 Cir., 346 F.2d 291, 294; *People v. Mason*, 22 Mich.App. 595, 178 N.W.2d 181, 187; and *State v. O'Bremski*, 70 Wash.2d 425, 423 P.2d 530, 532. Thus, unless this first warrant was issued upon a proper showing of probable cause, the information the officer acquired about the articles allegedly belonging to the Wyoming Machinery Company could not be utilized to secure the second warrant. To hold otherwise would be an invi-

tation to the improvident issuance of an illegal search warrant upon which to base a following legal search.

We will rely upon the statements in the brief of the State as to what the affidavits showed, as they appear to be the best possible summary of the facts as conceived by the State. They are as follows:

"1. Kenneth Smith, who possessed the stolen rifles, was the father of Robert Gerald Smith and Ronald Smith;

"2. That Robert Gerald Smith and Ronald Smith, brothers, both lived at 939 South Chestnut Street in Casper, Wyoming;

"3. That Ronald Smith was issued a traffic citation on the date and at a time in Casper, Wyoming, when the burglary of the J. C. Penney store took place; and

"4. That Robert Gerald Smith and Ronald Smith were then seen at their father's ranch on the morning of the burglary of Penneys."

There were two affidavits attached to and presented with the printed conclusory affidavit of the officer, and which by reference were incorporated therein, upon which the State based its showing of probable cause to secure such warrant. One was the affidavit of Officer Dovala which dealt exclusively with the establishment of the fact that a burglary had occurred and that certain stolen property had been found at the residence of Kenneth Smith, father of the defendant, at his residence located in Fremont County, Wyoming, being 20 miles south of Lander. This affidavit in no way refers to this defendant or his brother or suggests any possible connection of the defendant with this crime. The affidavit of Officer Johnson sets out the relationship of defendant and his bother to Kenneth Smith; that they resided in Casper; that they had been seen at the Kenneth Smith ranch on the morning of September 7; that there had been a traffic citation issued to Ronald Smith on September 7 at approximately 1 a. m.; and that the burglary had taken place after 1:30 a. m. on that date.

■■ Although there was some supplemental testimony taken at the time of the hearing on the motion to suppress, we are confined to and can only consider what the record reflects was before the issuing magistrate at the time of the issuance of the warrant, *Aguilar v. State of Texas*, 378 U.S. 108, 84 S.Ct. 1509, 1511, 12 L.Ed.2d 723, cited with approval in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 587, 21 L.Ed.2d 637; and *Frey v. State*, 3 Md. App. 38, 237 A.2d 774, 778. This is particularly true when considering a motion to suppress based upon the Wyoming Constitution. The provision of the Wyoming Constitution covering search and seizure, being Article 1, § 4, is different than that of the United States Constitution and makes it mandatory that the search warrant be issued upon an affidavit. This difference has heretofore been the subject of comment in *State v. Peterson*, 27 Wyo. 185, 194 P. 342, 345, 13 A.L.R. 1284, where it was said:

"Our Constitution is some stronger, in that it uses 'affidavit' instead of 'oath or affirmation'; the word 'affidavit' requiring the matter to be in written form."

In recognition of this difference the court, at 194 P. 347, cited with approval the case of *Lippman v. People*, 175 Ill. 101, 51 N.E. 872, after noting that Wyoming and Illinois have identical constitutional provisions,[1] wherein it was said:

" * * * It is a step beyond the Constitution of the United States, in requiring the evidence of probable cause to be made a permanent record in the form of an affidavit; * * * "

*People v. Elias*, 316 Ill. 376, 147 N.E. 472, 474, follows the same rule.

■ The probable cause necessary to be shown to uphold the search warrant in this case must be directed at the proposition

---

1. Article 2, § 6, Illinois Constitution (adopted 1870).

that there were fruits of the crime or evidence thereof in the area or structure sought to be searched, i. e., defendant's residence.[2] There must be a showing not only that a crime has been committed but that there is evidence of the crime in the place to be searched, *Frey v. State,* supra. This is clearly stated in *Rice v. Wolff,* 8 Cir., 513 F.2d 1280, 1285, reversed on other grounds — U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067:

> " * * * It is fundamental constitutional law, of course, that a search warrant may issue only upon a showing that there is probable cause to believe that the item sought is located on the premises for which the search warrant is requested. [Citations] * * *."

And see *United States v. Kirk,* 8 Cir., 534 F.2d 1262, 1280. The case of *United States v. Lucarz,* 9 Cir., 430 F.2d 1051, 1055, clearly delineates the application of this principle, which is the dispositive element in this case, with the following statement:

> "But of course it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence. * * *"[3]

■ We have heretofore adopted and recognized the rule that affidavits upon which search warrants are based are to be tested "by much less rigorous standards than those governing admissibility of evidence and that issuing magistrates are not to be confined by niggardly limitations," *Deeter v. State,* Wyo., 500 P.2d 68, 70; also, see *Croker v. State,* Wyo., 477 P.2d 122, 127. *Deeter,* however, must be read in conjunction with the case of *Wiggin v. State,* 28 Wyo. 480, 206 P. 373, 376, which asserts the rule that a search warrant is invalid if the affidavit does not show probable cause. *Deeter* is not to be employed to blindly sustain the actions of the magistrate or to place any reviewing court in a position that it may refuse to examine the factual basis for such issuance. To refuse or to fail to do so could result in serious erosion of one of our most valuable constitutional rights, and unless there is factual basis for determination of probable cause this court would be evading its responsibility by failing to declare this to be the case.

■■ We have heretofore approved the test of probable cause as being a factual situation sufficient to warrant a reasonably cautious or prudent man to have a belief that there was a crime being committed or one that had been committed, *Rodarte v. City of Riverton,* Wyo., 552 P.2d 1245, 1253, and that standard must be applied to the facts in this case for a determination of whether they would warrant a reasonably prudent and cautious man to believe that the property stolen from the J. C. Penney Company was in part concealed in this residence. Mere suspicion does not establish probable cause, *Spinelli v. United States,* supra, 89 S.Ct. at 590.[4]

■ The determination of probable cause must rest upon the factual showing in each case. "Decided cases are helpful only in declaring the general rule, and are persuasive only insofar as they present similar facts," *Garhart v. United States,* 10 Cir., 157 F.2d 777, 779. Although nearly all the cases which have come to our attention in researching this matter involve questions of the reliability of the inform-

---

2. "A home is entitled to special dignity and special sanctity," *Goddard v. State,* Wyo., 481 P.2d 343, 344, citing with approval *Holt v. State,* 17 Wis.2d 468, 117 N.W.2d 626, 631, certiorari denied 374 U.S. 844, 83 S.Ct. 1900, 10 L.Ed.2d 1064, rehearing denied 375 U.S. 873, 84 S.Ct. 36, 11 L.Ed.2d 104.

3. For a clear expression that the "persons," "houses," "papers," and "effects" are separate and privileged areas constitutionally protected, see the remarks of Judge Learned Hand in *United States v. Rabinowitz,* 2 Cir., 176 F.2d 732, 735, reversed on other grounds 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

4. The dissenting opinion in *Rodarte v. City of Riverton,* supra, 552 P.2d at 1267, plainly sets out that mere suspicion cannot be the basis of probable cause and cites considerable authority therefor.

ants, and if the facts secured from them were sufficient upon which to rest the finding of probable cause, the case of *United States v. Flanagan*, 5 Cir., 423 F.2d 745, does reflect a factual situation which is most helpful. The *Flanagan* case involved a showing of a commission of a crime by a defendant named in the affidavit. Some of the jewelry, being a part of the property stolen, was found upon defendant when he was arrested and the remainder was not recovered. Defendant was a known felon who attempted to flee when arrested. Additionally, the affidavit in that case included a conclusory statement that it was affiant's belief that the remainder of the jewelry was concealed in defendant's residence, which was attempted to be fortified by a recitation that this was a "strong probability." The court held this did not constitute a proper showing of probable cause. That showing was much stronger than the showing in this case because it revealed a direct connection of the defendant, who was identified as the perpetrator of the crime, and the stolen property was in his own residence. Here we have only the father and son relationship, with proof of the crime directed at the father. There is not a single fact from which any inference could be drawn that these stolen goods were in the defendant's residence. In its disposal of the *Flanagan* case, the court based its holding on the lack of showing that the remaining jewelry might be found at his residence, reciting that it was merely the inference of the district attorney. Here the inference is that of the police officer, with less factual basis. In this case the mere relationship of father and son cannot be used to even create a suspicion as we do not, in our system of law, visit the sins of the father upon the son. The fact that these sons visited the ranch of the father and mother, standing alone, does not create any suspicious circumstance, unless it be considered improper for families to maintain such relationships. Nor can we attach any particular inference to the traffic citation in the ab-

sence of some suggested proximity with the place of the crime, in the light of the fact that Casper is Ronald's place of residence. If these facts might be presumed to show anything, they might show the commission of this burglary, but the position of the State that probable cause can arise in this manner, insofar as the possibility that there is stolen property concealed within the defendant's residence, certainly does not recognize the distinction and the rule set out in *United States v. Lucarz*, supra; and if we are to hold otherwise we must say that probable cause for arrest involving stolen property is probable cause to search a residence of a defendant, which is demonstrably not true.

Because of the fact that the record does not establish any probable cause to believe that the articles from the Penney burglary might have been concealed at this residence, the basis for the warrant upon which reliance is made herein has been destroyed and we must find there was no probable cause for the issuance of the warrant for the search in this case, and the lack of showing of probable cause makes this search warrant violative of both Article 1, § 4, of the Wyoming Constitution and the Fourth Amendment to the Constitution of the United States.

Although appellant raises five other points for reversal, we find no necessity of discussing them because the chance is most remote that they might arise in the retrial of this matter.

The judgment is reversed.

THOMAS, Justice (concurring).

I concur in all that is set forth in the majority opinion in this case. An examination of the record discloses that the Warrant for Search and Seizure which was issued in this case contains no description of the property which the officers theoritically were authorized to search for and seize if found. Rule 40(c), W.R.Cr.P., requires that information to be included in the search warrant. As the United States

Court of Appeals for the Tenth Circuit has said:

" * * * Search warrants are required to particularly describe the things to be seized and officers executing the warrant are authorized to seize only the property described. A general search is not permitted. *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431; *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; *Seymour v. United States,* 10 Cir., 369 F.2d 825, cert. denied, 386 U.S. 987, 87 S.Ct. 1297, 18 L.Ed.2d 239. * * * " *Mesmer v. United States,* 405 F.2d 316 (10th Cir. 1969).

While the appellant did not assert this defect in this case, it is subject to notice pursuant to Rule 49(b), W.R.Cr.P. Such a defect has the potential to nullify any criminal prosecution, and law enforcement officers, judges and commissioners should be alert to notice whether the search warrant proper, as well as the supporting affidavits, adequately describes the property to be seized.