2006 WY 122

**Harry Joe BOUCH, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 04–176.**

Supreme Court of Wyoming.

Sept. 27, 2006.

Representing Appellant: Jason M. Tangeman, of Anthony, Nicholas, Tangeman & Yates, LLC, Laramie, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Harry Joe Bouch entered conditional guilty pleas to one count of attempted second degree sexual assault and three counts of second degree sexual assault.[1] He

---

* Chief Justice at time of oral argument.

1. At the change of plea hearing, Mr. Bouch pled guilty to three counts of second degree sexual assault and one count of attempted second degree sexual assault. However, the Judgment and Sentence states that he pled guilty to four counts of second degree sexual assault. Our disposition

reserved his right to appeal an adverse determination of a motion to suppress evidence seized from his home. We conclude that the district court erred in denying the motion to suppress. The affidavit in support of the search warrant was insufficient to establish probable cause. Accordingly, we reverse and remand with instructions that Mr. Bouch be allowed to withdraw his guilty pleas.

### ISSUES

[¶ 2]   We restate the issues as follows:

I. Did the search warrant affidavit provide a sufficient nexus to lead a reasonably prudent and cautious person to believe that there was a probability that evidence of the crime was located at the address to be searched?

II. Was Mr. Bouch's guilty plea entered involuntarily because he received ineffective assistance of counsel?

### FACTS

[¶ 3]   Mr. Bouch was charged in Converse County with fifteen assorted felony counts for various acts of sexual misconduct with his four minor daughters.[2] Mr. Bouch pled not guilty to all charges. He retained counsel and was represented throughout the proceedings. Prior to trial, Mr. Bouch filed a motion to suppress all evidence obtained from the execution of a search warrant at his residence, asserting that the affidavit presented to the magistrate did not establish probable cause. The district court held a hearing and received testimony from the law enforcement officer who had signed the affidavit in support of the application for the search warrant. The district court ruled that the affidavit did not establish a sufficient basis to search for most of the items that were seized, but denied the motion to suppress as it related to notes, letters, photographs, and a green box containing these items. Mr. Bouch sought interlocutory appellate review of the district court's decision. We declined to accept the petition for review.

[¶ 4]   After his motion was denied, Mr. Bouch changed his plea pursuant to a plea agreement. He pled guilty to four counts, one as to each daughter, and the other eleven counts were dismissed. The pleas were conditional, pursuant to W.R.Cr.P. 11(a)(2).[3] Mr. Bouch reserved the right to appeal the suppression determination. The district court sentenced Mr. Bouch to a prison term of sixteen to eighteen years on each count, to run concurrently, and imposed a $10,000 fine. A timely notice of appeal was filed. Prior to completion of the appeal process, Mr. Bouch's counsel died.

[¶ 5]   Mr. Bouch's new appellate counsel filed a motion requesting that the case be remanded to the district court for an evidentiary hearing concerning the issue of ineffective assistance of trial counsel. We granted the motion, directing the district court to receive evidence and make findings regarding Mr. Bouch's claims pursuant to *Calene v. State*, 846 P.2d 679, 692 (Wyo.1993). Following remand, a hearing was held on March 2, 2005. The district court issued its findings and conclusions on March 10, 2005, concluding that Mr. Bouch had been deprived of the effective assistance of counsel with regard to the impact and meaning of his guilty plea. However, the district court also found that prejudice may not have been established, depending upon the legal impact of our decision in *Rutti v. State*, 2004 WY 133, 100 P.3d 394 (Wyo.2004). The parties thereafter provided supplemental briefing on appeal addressing the issue of ineffective assistance of trial counsel.

### STANDARD OF REVIEW

[¶ 6]   When evaluating the sufficiency of a search warrant affidavit we are guided by these principles:

> With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

---

of this case makes it unnecessary for us to address this discrepancy.

**2.** The original information included sixteen counts. After a preliminary hearing, Mr. Bouch was bound over on all counts. The information was amended to charge fifteen counts.

**3.** W.R.Cr.P. 11(a)(2) provides:

An affidavit presented in support of a search warrant is presumed valid. Search warrant affidavits are tested by a less vigorous standard than those governing the admissibility of evidence at trial. We interpret a search warrant affidavit "in its totality in a 'commonsense and realistic fashion.'" Because of the desire to encourage law enforcement personnel to seek warrants, any doubt should be resolved by sustaining the search.

*In re T.J.S. v. State,* 2005 WY 68, ¶ 10, 113 P.3d 1054, 1057 (Wyo.2005) (internal citations omitted).

### DISCUSSION

■ [¶ 7] In his first issue, Mr. Bouch contends that the district court erred in failing to suppress evidence obtained pursuant to a search warrant. On February 12, 2003, a police officer applied for a warrant to search 233 North 6th Street in Douglas, Wyoming. He provided the magistrate with an affidavit in support of his application. In its entirety, the affidavit provided:

I, [Affiant], being first duly sworn according to law depose and state as follows:

1. That I am now, and have been at all times herein mentioned, a police officer for the Douglas Police Department, Douglas, Wyoming, and that all incidents and matters related herein took place and otherwise occurred in Douglas, Converse County, Wyoming.

2. On February 11, 2003, Bob Shinmori, a Social Worker with the Department of Family Services, Laramie Peak District, Converse County Field Office, hereinafter referred to as DFS, reported that he had received a report from Douglas High School counselor, Bonnie Lane, that HARRY JOE BOUCH had allegedly molested his adoptive daughters.

3. I made contact with [DB], who is approximately fifteen years and eleven months of age, having been born on or about March 7, 1987. [DB] told me that her father, HARRY JOE BOUCH, had exposed his penis to her three or four times since they have lived in Douglas. She further stated that he tried to have sexual contact with her, attempting to touch her sexually, while he exposed his penis.

4. [DB] further stated to me that her sisters [AB] and [IB] had told her that they had seen their other sister, [AMB] and their father, Harry, having sex.

5. I made contact with [AMB], who is approximately fourteen years and four months of age, having been born on or about October 31, 1988, and she stated that she had been sexually assaulted by Harry, and that her father made her write sexually explicit notes to guys by the names of Richard and Sam, and he hid the notes—one of which was found on the heating ductwork in the basement.

7. [sic] [DB] stated that she had written notes on a calendar of when [AMB] and Harry had sex, and other incidents that had occurred. She further stated that her father had shown her Polaroid photographs of [AMB], one of which [AMB] was holding thong underwear that Harry had bought [AMB] and [DB], and another where she had her shirt off. [DB] stated that Harry then burned the photographs.

8. In cases of child molestation, there are frequently instances where the perpetrator has contacts through the internet and has accessed web sites displaying photographs of children, and may have placed photographs with respect to the victims on the computer hard drive or on web sites.

9. That this Affidavit is made in support of a warrant to search 233 North 6th Street, Douglas, Converse County, Wyoming, for journals, diaries, letters, notes, photographs, Polaroid camera, sex toys, pornography, computer hard drive, computer cds, disks, calendar, thong underwear.

Further your Affiant sayeth naught.

DATED THIS 12 day of February, 2003.

//signed by [Affiant]

The magistrate issued the warrant which authorized the search of 233 North 6th Street and the seizure of "journals, diaries, letters, notes, photographs, Polaroid camera, sex toys, pornography, computer hard drive, computer cds, disks, calendar, [and] thong underwear." The officer executed the search

at 233 North 6th Street on February 12, 2003, during which time over seventy items were seized and inventoried.

[¶8] On appeal, the State readily concedes that the district court properly suppressed most of the seized items, and therefore, those items are not at issue in this appeal. For the sake of clarity, we will outline those items which, we agree, are not in dispute. The majority of the suppressed items were not identified in the warrant, including candy, receipts, pieces of lace and rope, paper towels, a slip, a bathrobe, halter tops, plastic bags, a floral purse with accessories, pillow cases, bed sheets, blankets, socks, bras, couch cushions, a computer mouse, a computer keyboard, an 8mm video tape, and eight pairs of girls' underwear in varying sizes. A diary, two computer towers, and two Polaroid cameras were also suppressed.

[¶9] Our review focuses upon the remaining items that the district court declined to suppress. During the search, law enforcement also located a green metal military box with a lock marked "MSSGT HJ Bouch" in the basement of 233 North 6th Street. Within the box were five Polaroid pictures, six letters, and a scrap of paper. Mr. Bouch contends that the district court erred in not suppressing these items as well.[4]

[¶10] At the hearing on the motion to suppress, the police officer who applied for the warrant testified. He was questioned regarding his training and experience and the circumstances of the warrant issuance. At the time of the hearing, he had been an officer for eight months. The officer testified that he held the lowest level of certification and that this case was his first felony investigation and his first warrant application. At the time he applied for the warrant, he had no experience investigating or dealing with someone accused of molesting a child or taking inappropriate photographs of a child. His only training in this regard was a half-day class at the law enforcement academy. The officer also testified that the search warrant affidavit was prepared by an employee of the county attorney's office who had been provided his reports. He stated that while he had not typed the affidavit, he reviewed it

before signing it. Although the officer personally appeared before the magistrate, he did not provide any additional information before the magistrate signed the warrant.

[¶11] At the conclusion of the hearing, the district court found that the affidavit established probable cause that a crime had been committed. Defense counsel did not disagree with that conclusion but argued that the affidavit did not provide sufficient foundation that evidence of that crime would be found at 233 North 6th Street.

> ... There is absolutely no connection in the affidavit—and we have to focus on the affidavit. There is no nexus between that residence and those photographs. There is no nexus whatsoever saying those are at that residence.... You have to have some kind of nexus—connection—between the crime and evidence, and tie it to a specific place. This affidavit didn't do it. It frankly doesn't cut it.

The district court announced a tentative decision to deny suppression of the notes, letters, and photographs but permitted the parties to submit written briefs in support of their positions. Shortly thereafter, the district court issued a written decision and entered an order denying suppression of the notes, letters, photographs and the metal box where those items were found.

[¶12] Mr. Bouch asserts that the district court's decision was erroneous. He claims that the affidavit failed to supply the magistrate with facts sufficient to connect notes, letters, photos, or Mr. Bouch, to the address to be searched. He urges us to find that based upon the four corners of the affidavit, this essential nexus was lacking and, therefore, the warrant should not have issued. Additionally, Mr. Bouch points to false information in the affidavit, asserting that such information should be excluded in assessing whether probable cause was demonstrated.

[¶13] In making his argument, Mr. Bouch relies upon Article 1, § 4 of the Wyoming Constitution, and our recent deci-

---

4. These items were not included in the record on appeal.

sions interpreting that provision.[5] Because the Wyoming Constitution, unlike the Fourth Amendment, requires an affidavit, rather than just an oath or affirmation, we have held that sufficient factual support for issuance of the warrant must be found within the affidavit. *Page v. State*, 2003 WY 23, ¶ 9, 63 P.3d 904, 909 (Wyo.2003); *Hixson v. State*, 2001 WY 99, ¶ 7, 33 P.3d 154, 157 (Wyo.2001); *Cordova v. State*, 2001 WY 96, ¶ 13, 33 P.3d 142, 148 (Wyo.2001). The affidavit must supply the issuing officer with sufficient information to make an independent judgment that probable cause exists for the warrant. *TJS*, ¶ 12, 113 P.3d at 1057; *Bonsness v. State*, 672 P.2d 1291, 1292–1293 (Wyo.1983). The affidavit in support of the warrant, therefore, must include more than bare conclusions of the affiant. *Id.* Because of this affidavit requirement, we have characterized Article 1, § 4 of the Wyoming Constitution as somewhat stronger than its federal counterpart. *Smith v. State*, 557 P.2d 130, 132 (Wyo.1976). With these principles in mind, we turn to the contents of the affidavit.

■ [¶ 14] We note initially that the affidavit contains false information, as admitted by the officer during his testimony at the suppression hearing.[6] However, the district court did not specifically address this issue. Based upon the record, we are unable to conclude that Mr. Bouch met his burden of proving that the affiant gave deliberately false statements or recklessly disregarded the truth. *Davis v. State*, 859 P.2d 89, 93 (Wyo.1993). The false information in the affidavit may have resulted from negligence or innocent mistakes, which would not require that they be stricken from the affidavit. *Id.* at 94.

5.  Article 1, § 4 provides:

    The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.
    In his brief, Mr. Bouch states that he brings his claim under the Fourth Amendment only to the extent necessary to preserve issues for any subsequent federal habeas proceedings. He provides no Fourth Amendment analysis.

■ [¶ 15] Probable cause justifying issuance of a search warrant involves a twofold finding. First, the factual situation must be sufficient to warrant a reasonably cautious or prudent person to believe that a crime was being committed or that one had been committed. Second, there must be an adequate showing that the fruits of the crime or the evidence thereof are in the area or structure sought to be searched. *Cordova*, ¶ 12, 33 P.3d at 148. This second prong is often described as requiring a "nexus" between the contraband to be seized or the suspected criminal activity and the place to be searched. *United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir.1998). It is "necessary that there be established a sufficient nexus between (1) criminal activity, and (2) the things to be seized, and (3) the place to be searched." Wayne R. LaFave, *Search and Seizure* § 3.7(d), at 412 (4th ed.2004).

[¶ 16] Prior to this case, we have not specifically discussed the nexus requirement of probable cause. Affidavits that we have found sufficient established the requisite nexus. *E.g., Urbigkit v. State*, 2003 WY 57, 67 P.3d 1207, 1214–1217 (Wyo.2003) (facts connecting suspect to three locations); *Kitzke v. State*, 2002 WY 147, 55 P.3d 696, 700 (Wyo. 2002) (informant's description of premises belonging to suspect confirmed by officer investigation and observation); *Cordova*, ¶ 22, 33 P.3d at 150–151 (informant observed marijuana in residence and officer confirmed that suspect resided at place to be searched); *Southworth v. State*, 913 P.2d 444, 448 (Wyo. 1996) (affidavit linked computer equipment stolen from elementary school to address to be searched and identified residents of that location).[7]

6.  Mr. Bouch's trial counsel questioned the officer about inconsistencies between statements in the affidavit and information in the officer's reports. The officer admitted that the incident described by DB in paragraph 7 about photographs shown to her and then burned did not take place in Douglas, Wyoming as asserted in paragraph 1 of the affidavit. That incident took place in South Carolina before the family moved to Wyoming.

7.  Even those affidavits which were otherwise lacking probable cause recited some nexus to the search location. *Page*, ¶ 7, 63 P.3d at 907–908 (identifying residents and providing officer observations during welfare check at residence); *Hix-*

[¶ 17] Under a probable cause analysis, the nexus inquiry is distinct from the first prong relating to criminal activity. We have expressly rejected the notion that probable cause to believe one has committed a crime necessarily provides probable cause for a search of his residence. *Smith*, 557 P.2d at 134. In *Smith*, we stated:

It is fundamental constitutional law, of course, that a search warrant may issue only upon a showing that there is probable cause to believe that the item sought is located on the premises for which the search warrant is requested.

. . .

But of course it cannot follow in all cases, simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence.

*Id.* at 133 (citations omitted). *Accord Rowland*, 145 F.3d at 1204. ("Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity.").

[¶ 18] As noted by one court, if probable cause does not require a connection to the search location, the risk arises that an officer might "just as easily [supply] the magistrate with an address belonging to an unrelated third party." *Janis v. Commonwealth*, 22 Va.App. 646, 472 S.E.2d 649, 653 (1996). An absence of a nexus precludes a finding of probable cause. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005); *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir.1993); *State v. Souto*, 578 N.W.2d 744, 749–751 (Minn.1998); *State v. Longbine*, 257 Kan. 713, 896 P.2d 367, 372 (1995); *People v. Leftwich*, 869 P.2d 1260, 1267 (Colo.1994); *Guth v. Commonwealth*, 29 S.W.3d 809, 811 (Ky.Ct.App.2000). As explained below, we conclude that the affidavit in this case failed to establish the required nexus between the crime, or the evidence thereof, and the location to be searched.

[¶ 19] There is nothing within the affidavit that connects notes, letters, photographs, or Mr. Bouch, to 233 North 6th Street. Although we afford favorable inferences to support the issuance of the warrant, we cannot make inferences from facts that are not present. While we do not require certainty in probable cause determinations, mere suspicion is not sufficient ground to issue a search warrant. *Ostrowski v. State*, 665 P.2d 471, 478 (Wyo.1983). This affidavit did not indicate why the officer believed that the items to be seized would be located at 233 North 6th Street or even that Mr. Bouch had a connection with the given address. *See, e.g., United States v. Hang Le–Thy Tran*, 433 F.3d 472, 482 (6th Cir.2006); *Mills v. City of Barbourville*, 389 F.3d 568, 575 (6th Cir.2004) ("Nothing is stated about why 801 North Allison is being searched."); *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir.1998) (emphasis in original) ("[T]he affidavit completely neglects to indicate *why* the affiant believed that Shutters himself had any connection with the Tennessee Residence.").

[¶ 20] The State argues that the nexus can be inferred, but the paucity of support offered by the State for this proposition is revealing. The sole case cited by the State, *United States v. Hunter*, 86 F.3d 679, 681–682 (7th Cir.1996), is clearly distinguishable. The challenged affidavit in *Hunter* "... referred four times to Hunter's residence." *Id.* at 682. The *Hunter* court understandably concluded that "the warrant application and affidavit ... clearly established that the place to be searched was Hunter's residence." *Id.* at 681. Additionally, subsequent Sixth Circuit cases have specifically discussed a lack of any nexus as fatal to probable cause, and we find these decisions to be more on point. *See Hang Le–Thy Tran*, 433 F.3d 472 and *Van Shutters*, 163 F.3d at 336. In direct contrast to the facts in *Hunter*, the affidavit challenged in this case makes no mention of Mr. Bouch's residence and does not identify 233 North 6th Street as Mr. Bouch's residence, the place where his

---

*son*, ¶ 8, 33 P.3d at 157–158 (identifying resident of premises and asserting belief that he was

keeping controlled substances there).

daughters reside, or as a place having any connection to Mr. Bouch or the alleged crime.

[¶ 21] We have long recognized that the Wyoming Constitution requires a four corners analysis, and it is this emphasis upon the affidavit itself which informs our decision today. Our cases firmly demonstrate that a finding of probable cause must be grounded in facts appearing in the affidavit. *Schirber v. State*, 2006 WY 121, ¶ 7, 142 P.3d 1169 (Wyo.2006); *Hixson*, ¶ 7, 33 P.3d at 157; *Cordova*, ¶ 14, 33 P.3d at 148–149. Although we view affidavits in a practical and common sense way, we are ultimately constrained by the information included in the affidavit. *Page*, ¶ 9, 63 P.3d at 909. In this case, the officer omitted facts which should have been obvious, but which were nevertheless excluded from the affidavit. We must disagree with the State that we can substitute "inferences" for these essential facts under the guise of a "common sense" reading. In the absence of facts within the affidavit, establishing a nexus between the place to be searched and the evidence sought, we cannot find probable cause.

[¶ 22] Our sister courts in Montana and Washington have expressed similar sentiments explaining why the State's approach is incongruous with a four corners analysis. In rejecting an expansive use of inferences to find a nexus, the Montana Supreme Court stated:

> We decline to eviscerate the requirement that when a person's residence is to be searched, the application must demonstrate the probability that the items to be seized will be found within it.
>
> The warrant requirement is the mechanism implementing the constitutional protection against the "chief evil" of the government physically invading the privacy and sanctity of a person's home. . . .
>
> Moreover, this bedrock principle cannot be overcome by resorting solely to "common sense," "practical considerations," and "probability." Facts stated in the application are also statutorily and constitutionally required before the magistrate is entitled to use these other intuitive approaches

in making the totality of circumstances determination. Here, there were no facts included in the application for search warrant that implicated Graham's home. Common sense, practical considerations and probabilities are not, therefore, enough.

> Rather, if the authorities had probable cause to search Graham's home, then they were required under well-settled principles of search and seizure law to include facts supporting that conclusion within the four corners of the search warrant application and to ensure that the home was particularly designated as a place to be searched in the warrant.

*State v. Graham*, ¶¶ 24–27, 325 Mont. 110, 103 P.3d 1073, 1080 (2004) (internal citations omitted). In a similar vein, the Supreme Court of Washington emphasized that underlying facts are needed to support an inferential nexus.

> Absent a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law. . . .
>
> . . . [O]ur precedent requires probable cause be based on more than conclusory predictions. Blanket inferences of this kind substitute generalities for the required showing of reasonably specific "underlying circumstances" that establish evidence of illegal activity will likely be found in the place to be searched in any particular case. . . .
>
> The rule the State proposes would broaden "to an intolerable degree" the strict requirement that probable cause to search a certain location must be based on a factual nexus between the *evidence* sought and the *place* to be searched. Such a rule would not only subvert fundamental constitutional protections but would be inconsistent with the approach and reasoning of our previous cases.

*State v. Thein*, 138 Wash.2d 133, 977 P.2d 582, 588–589 (1999) (internal citations omitted) (emphasis in original). Likewise, we conclude that permissible inferences must arise from facts appearing in the affidavit. Contrary to the State's contention, this is not

unduly rigorous and is not at odds with our espoused policy favoring warrant applications. First, we afford every favorable inference to, and may consider the totality of the circumstances appearing from, the facts that *do* appear within the affidavit. Second, Wyoming law specifically affords the issuing judicial officer an opportunity to cure a flawed affidavit in a manner that preserves a record for later review.

[¶ 23] Unlike reviewing courts, the issuing officer is not necessarily limited to consideration of the facts the affiant has chosen to include in the affidavit. In Wyoming, a judicial officer may seek supplementation of a search warrant affidavit by examining the applicant under oath and having that testimony recorded. W.R.Cr.P. 41(c). That provision provides in pertinent part:

(c) *Issuance and contents of warrant.*—A warrant shall issue only on affidavit sworn to before a person authorized by law to administer oaths and establishing the grounds for issuing the warrant. If the judicial officer is satisfied that the grounds for the application exist or that there is probable cause to believe that they exist, the judicial officer shall issue a warrant particularly identifying the property or person to be seized and naming or describing the person or place to be searched. **Before ruling on a request for a warrant**

**the judicial officer may require the affiant to appear personally and may examine under oath the affiant and any witnesses the affiant may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit....**

(Emphasis added.) This rule highlights the important role of judicial officers in the search warrant application process. It also reinforces the principle that the probable cause determination for a search warrant be based upon a permanent record. *Hixson,* ¶¶ 5–7, 33 P.3d at 156–157. In this case, the magistrate may have been able to remedy the lack of nexus problem had he invoked his authority under W.R.Cr.P. 41(c) or simply refused to sign the warrant until an adequate nexus had been set forth in the affidavit.[8]

[¶ 24] The officer's affidavit failed to provide any basis to believe that evidence would be located at 233 North 6th Street. The only mention of 233 North 6th Street is in the last paragraph, i.e. the request to search it. The fact that an officer is requesting a search of a particular location has no bearing on whether or not probable cause exists. "Facts which lead the affiant to believe that a warrant is justified must be presented in the affidavit." *Bonsness,* 672 P.2d at 1293.

---

8. Under federal law, a magistrate may have even greater flexibility to remedy the defects in an affidavit before issuing a warrant. For example, an affidavit supplying no nexus was examined in *Hang Le–Thy Tran,* 433 F.3d 472. In that case, the defendant challenged the warrant for her mobile home, asserting that it lacked probable cause since it failed to state the required nexus between the place to be searched and the crime. *Id.* at 481. The trial court denied the motion to suppress, finding that a "common sense" reading of the affidavit established a relationship between the defendant and the place to be searched. *Id.* at 479. The probable cause deficiency in the affidavit was noted by the appellate court:

The affidavit supporting the search warrant for 338 Vinedale SE, Kentwood, Michigan, described the residence with particularized detail, setting forth both the mobile home's exact location and its physical appearance. Likewise, it identified the items to be seized in an equally detailed fashion, recounted the arson at Kimberly Beauty College on March 25, 2002, and connected Tran with the arson. The

underlying affidavit, however, neither explicitly connected the searched residence located at 338 Vinedale SE to the fire at Kimberly Beauty College, nor stated that a person connected with the arson lived at the searched residence. The affidavit contains no statement or evidence that Tran lived at 338 Vinedale SE. In short, the affidavit did not indicate *why* Detective Struve believed that the items to be seized would be located at 338 Vinedale SE or that the defendant had a connection with the mobile home located at the given address.

*Id.* at 481–482 (emphasis in original). However, the Sixth Circuit Court of Appeals found that the deficiency in the warrant was "cured" by oral explanation by the officer presented in supplementation of the affidavit. Testimony at the suppression hearing established that it was the magistrate's practice to examine warrant applicants to ensure a nexus. In response to such questioning, "... Detective Struve established that the defendant lived at the residence to be searched, and that he believed that evidence of the arson would be found in the defendant's mobile home." *Id.* at 482.

[¶ 25]   As the foregoing demonstrates, the affidavit did not supply the requisite nexus between the suspected criminal activity and 233 North 6th Street.   The magistrate did not have a sufficient basis to find probable cause and should not have issued the warrant.   The district court erred in failing to suppress the remaining items obtained from the search.

[¶ 26]   Perhaps anticipating our decision, the State has requested that we make clear that our decision only pertains to evidence obtained pursuant to the execution of the search warrant at 233 North 6th Street, on February 12, 2003.   In that regard, the State specifically references two calendars provided by DB to law enforcement subsequent to the search.   Additionally, there is some mention by the parties of a search conducted at the Bouch residence prior to February 12, 2003.   We agree with the State that this opinion does not address any of the State's evidence obtained by means other than the search at issue here.   However, the State's request for clarification raises additional concerns.

[¶ 27]   The existence of additional evidence against Mr. Bouch not addressed in this appeal causes us to question the use of a conditional plea under the circumstances of this case.   The evidentiary value of the notes, letters, and photographs is not immediately apparent because these items were not included in the record on appeal.   We do not have any indication that suppression of these items will preclude the State from pursuing any, or all, of the charges it originally filed against Mr. Bouch.   Indeed, the State's specific mention of other evidence and the request to clarify that we have not suppressed such evidence, indicates the State's intent to continue to prosecute Mr. Bouch if he prevailed on appeal.   Additionally, comments contained in the district court's Findings of Fact and Conclusions of Law from the *Calene* hearing indicate that Mr. Bouch also anticipated a trial even if he prevailed on appeal.   The district court stated, "It is likely that the Defendant ... believed that he would win his suppression appeal before the Wyoming Supreme Court **and then be able to present his case before a jury.**"   (Emphasis added.)

[¶ 28]   Generally,   a   trial   court should only approve a conditional plea if assured that the decision of the appellate court will dispose of the case.   *United States v. Bundy*, 392 F.3d 641, 647–648 (4th Cir.2004); *United States v. Yasak*, 884 F.2d 996, 999 (7th Cir.1989).   The provisions of W.R.Cr.P. 11(a)(2) regarding conditional pleas are similar to those set forth in Rule 11 of the Federal Rules of Criminal Procedure.   The advisory notes to the 1983 Amendment to Rule 11 of the Federal Rules of Criminal Procedure indicate that the conditional plea procedure is appropriate only when determination of the issue on appeal would resolve the case:

> ... As for consent by the government, it will ensure that conditional pleas will be allowed only when the decision of the court of appeals will dispose of the case either by allowing the plea to stand or by such action as compelling dismissal of the indictment or suppressing essential evidence. Absent such circumstances, the conditional plea might only serve to postpone the trial and require the government to try the case after substantial delay, during which time witnesses may be lost, memories dimmed, and the offense grown so stale as to lose jury appeal.   The government is in a unique position to determine whether the matter at issue would be case-dispositive, and, as a party to the litigation, should have an absolute right to refuse to consent to potentially prejudicial delay....

Fed.R.Crim.P. 11, Notes of Advisory Committee on Rules, 1983 Amendment.

[¶ 29]   Prior to entering his guilty plea, Mr. Bouch petitioned this Court for review of the district court's ruling on the motion to suppress.   We denied the petition.   In essence, the reserved appeal resulting from the conditional plea is a renewed attempt to obtain interlocutory review of the district court's evidentiary ruling.   In our discretion, we could have declined to address this issue because it would not be case dispositive. However, in light of the unique circumstances of this case and because we have not previously addressed our concerns regarding the proper application of W.R.Cr.P. 11(a)(2) raised here, we have opted to consider and

determine the appellate issues relating to the motion to suppress. Having determined that the motion to suppress should have been granted, we need not address the ineffectiveness of counsel issue raised by Mr. Bouch.

[¶ 30] We reverse the district court's decision denying the motion to suppress. The judgment and sentence is hereby vacated and we remand to the district court for further proceedings consistent with this opinion. Upon remand, Mr. Bouch shall be allowed to withdraw his guilty pleas.

BURKE, Justice, delivers the opinion of the Court; VOIGT, Chief Justice, files a specially concurring opinion.

VOIGT, Chief Justice, specially concurring.

[¶ 31] I concur. I write separately for the reasons set forth in my concurring opinion in *Rohda v. State,* 2006 WY 120, ¶¶ 28–29, 142 P.3d 1155, 1169 (Wyo.2006).