# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 9

### OCTOBER TERM, A.D. 2022

#### January 27, 2023

KYE TYRELL KREUSEL,

Appellant
(Defendant),

v.                                                          S-22-0135

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
The Honorable Richard L. Lavery, Judge

*Representing Appellant:*
    Eric F. Phillips, Eric F. Phillips & Associates, Rock Springs, Wyoming.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

---

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     After a trial, a jury convicted Kye Tyrell Kreusel of felony strangulation of a household member and misdemeanor false imprisonment.  The jury found him not guilty on two counts of first-degree sexual assault, and the trial court granted his motion for judgment of acquittal on a third count of first-degree sexual assault.  He claims the district court erred during the trial by denying his motion to suppress his journals and admitting the journals into evidence.  He also claims the trial court abused its discretion at sentencing by considering conduct related to the three counts for which he was acquitted.  We affirm.

## ISSUES

[¶2]     Mr. Kreusel raises two issues which we restate as:

        1.  Did the district court err by concluding the affidavit in support of the search warrant established probable cause to search and seize his journals?

        2.  Did the district court abuse its discretion at sentencing by considering conduct for which Mr. Kreusel was acquitted?

## FACTS

[¶3]     Mr. Kreusel and his wife Dana Kreusel lived in Green River, Wyoming, with their four children.  On the morning of May 21, 2020, Mr. Kreusel and Ms. Kreusel got into an argument because Mr. Kreusel thought Ms. Kreusel was ignoring him.  They went into their bedroom.  Mr. Kreusel closed and locked the door and stood in front of it.  Ms. Kreusel asked Mr. Kreusel multiple times to let her leave the room, but he refused to let her go.  After an estimated forty-five minutes, Mr. Kreusel let Ms. Kreusel out of the room so she could help their children with their online schooling.

[¶4]     Later that day, Ms. Kreusel went to the Green River Police Department to report the bedroom incident.  She was interviewed by Officer Kevin Lennon and Sergeant Jesse Nielson.  In addition to recounting the event of that morning, Ms. Kreusel reported numerous other incidents of sexual, physical, mental, and emotional abuse by Mr. Kreusel toward her.  Among these incidents, Ms. Kreusel reported the following:

> **July 19, 2017**:  Ms. Kreusel woke up to Mr. Kreusel on top of her.  He was holding her hands above her head and touching her body all over, including down her pants.  When she resisted, Mr. Kreusel stated, "it's ok, it's me Mitch," referring to Ms. Kreusel's best friend with whom Mr. Kreusel believed she was having an affair.

1

**September 27, 2017**:  Ms. Kreusel woke up from sleeping on the couch to Mr. Kreusel biting her ear.  After he bit her ear a second time, he flipped her over onto her stomach, pulled her shorts and underwear down, tied her right hand behind her back using the string from her shorts, and threatened to insert the handle of a screwdriver, which he had attached to a cordless battery-powered drill, "inside of her and turn the drill on."  When she started screaming and resisting, Mr. Kreusel flipped her onto her back, took off her underwear, stuffed the underwear into her mouth, and raped her.

**September 17, 2018**:  Ms. Kreusel and Mr. Kreusel got into an argument over sex.  When Ms. Kreusel asked him how much sex each week would appease him, Mr. Kreusel "got mad at her[,] picked her up and threw her onto their bed[,]" and said, "I just want to strangle you."  He sat on her and pinned both of her arms to her sides with his knees.  Mr. Kreusel placed both of his hands around Ms. Kreusel's throat and began choking her.  Ms. Kreusel saw "speckles" and "everything started to go black."  She had a "hard time breathing" and "thought she was going to die."  Mr. Kreusel stopped choking her and began punching the bed with his balled fists.  He struck Ms. Kreusel in the nose, causing it to bleed, and hit her lower leg, leaving a bruise.  After the incident, Ms. Kreusel had red marks on her neck from Mr. Kreusel's hands, her voice was hoarse for a couple of days, and she had a "hard time" swallowing and talking "for a short period."

**May 13, 2020:**  Ms. Kreusel was laying on the parties' bed.  Mr. Kreusel took off his pants and told her "she needs to 'suck' him."  Mr. Kreusel grabbed her by the hair and pulled her head toward his "exposed genitals."  Ms. Kreusel "did as [Mr. Kreusel] requested and then laid on the bed on her back."  Mr. Kreusel placed Ms. Kreusel's head over the edge of the bed and pushed his penis inside of her mouth.  She told him, "no, stop," and he replied, "you trained me to do that."

[¶5]   After the interview, Officer Lennon and Sergeant Nielson conducted a "civil standby" at the parties' residence to allow Ms. Kreusel to gather the children and some belongings.  While they were there, Mr. Kreusel arrived home.  The officers asked Mr. Kreusel about the incident which had occurred that morning.  He admitted he had argued with Ms. Kreusel because she ignored him when he was talking to her; they went into the bedroom and he shut the door; he stood in front of the door while they argued; Ms. Kreusel approached him multiple times seeking to leave; and he placed his hands on her upper arms to prevent her from leaving.  The officers arrested Mr. Kreusel for false imprisonment and transported him to the Sweetwater County Detention Center.

[¶6]   About two weeks later, on June 5, 2020, Ms. Kreusel was again interviewed by law enforcement.  During this interview, she informed the officers that Mr. Kreusel kept

"detailed" journals on his cellphone and work computer and he has several handwritten journals. She stated she had seen Mr. Kreusel journaling on his work computer at night and the document contained the date and time he was journaling. She said she believed Mr. Kreusel had been journaling "more and in more detail" since he started counseling in September 2019, and she knew he was in possession of the journals because he picked them up from their house after he bonded out of the detention center. She stated she believed Mr. Kreusel kept the journals in his work bag, which she described as a black canvas bag with a shoulder strap.

[¶7]    Twelve days later, Detective Robert Fischer obtained a warrant from a circuit court magistrate to search Mr. Kreusel's cellular phones, his place of employment, his work truck, and his person for "documents, books, papers and other tangible objects and information to include but not limited to: Books, journals, records, notes, ledgers, cellular telephones (including information stored in the cellular telephones through applications), computers, tablets, thumb drives, and external hard drives[.]" Law enforcement executed the warrant and seized, among other things, several computer thumb drives containing Mr. Kreusel's typewritten journals.

[¶8]    The State charged Mr. Kreusel with one count of first-degree sexual assault (physically helpless victim) in violation of Wyo. Stat. Ann. § 6-2-302(a)(iii) (LexisNexis 2021) (July 19, 2017, incident); two counts of first-degree sexual assault (submission of the victim with physical force or forcible confinement) in violation of § 6-2-302(a)(i) (September 27, 2017, and May 13, 2020, incidents); strangulation of a household member in violation of Wyo. Stat. Ann. § 6-2-509(a)(i) (LexisNexis 2021) (September 17, 2018, incident); and misdemeanor false imprisonment in violation of Wyo. Stat. Ann. § 6-2-203(a) (LexisNexis 2021) (May 21, 2020, incident). Mr. Kreusel filed a motion to suppress his journals. Among other things, he argued the affidavit in support of the search warrant did not establish probable cause justifying the search and seizure of his journals because it failed to provide sufficient facts demonstrating evidence of the alleged crimes would be found in his journals. The district court denied the motion, concluding the affidavit stated sufficient facts to believe a crime had been committed and that "evidence of a crime could be found in [Mr. Kreusel's] journal[s]."

[¶9]    During the jury trial, the State presented two entries from Mr. Kreusel's typewritten journals. The first entry contained information concerning the week beginning Monday, September 17, 2018 (the date of the strangulation). For Monday, Mr. Kreusel wrote in relevant part:

> Dana and I fooling around late – I said something that set off
> her porn emotions, she got furious at me, we ended up arguing
> about sex, she wouldn't stop making accusations[.] I threw her
> on bed and held her down, then let go and pulled away, came

3

back at foot of bed and g[o]t upset again and began punching bed[.] RUINED ALL PROGRESS!!

On Friday, Mr. Kreusel wrote he and Ms. Kreusel "began having an argument again [with] Dad and Mom (on the phone) 'mediating' (see those separate notes)." The second entry presented by the State consisted of Mr. Kreusel's "separate notes" concerning the "mediation." In those notes, Mr. Kreusel stated the following regarding "Kye's 'faults'" with respect to the "Monday night fight/2° Counseling": "frustration[,] anger[;] [l]ed to: []strangling[,] hitting." In another section titled, "What can I do specifically?," Mr. Kreusel wrote [apparently referring to what Ms. Kreusel said]: "Holding is OK" but "Don't pull me down on the bed," "Don't put your hands on my neck" and "Don't hold so tight I can't move."[1]

[¶10] At the close of the State's evidence, Mr. Kreusel moved for a judgment of acquittal with respect to the first-degree sexual assault (physically helpless victim) charge because Ms. Kreusel testified she was awake when Mr. Kreusel put his hand down her pants on July 19, 2017, and therefore she was not physically helpless at the time of the assault. The district court granted the motion. The jury found Mr. Kreusel not guilty of the remaining first-degree sexual assault counts, but guilty of strangulation of a household member and false imprisonment. The district court sentenced Mr. Kreusel to concurrent prison terms of five to eight years on the strangulation conviction and one year on the false imprisonment conviction. Mr. Kreusel timely appealed.

[¶11] Other relevant facts will be addressed in our discussion of the issues.

## DISCUSSION

### A. Motion to Suppress Evidence

[¶12] Mr. Kreusel maintains the district court erred by denying his motion to suppress evidence after finding the affidavit in support of the search warrant established probable cause to believe evidence of the alleged crimes would be found in his journals as required by Article 1, § 4 of the Wyoming Constitution. Our review of this issue is *de novo*. *TJS v. State*, 2005 WY 68, ¶ 9, 113 P.3d 1054, 1056-57 (Wyo. 2005) ("We apply a *de novo* standard of review when evaluating the issuance of a search warrant under Article 1, § 4 of the Wyoming Constitution." (citing *Urbigkit v. State*, 2003 WY 57, ¶ 9, 67 P.3d 1207, 1213 (Wyo. 2003))).

[¶13] Article 1, § 4 provides:

---

[1] In his brief, Mr. Kreusel claimed the journal entries admitted as evidence at trial included "doodles made [b]y Mr. Kreusel in [his] handwritten journals depicting figures engaged in acts of violence." He acknowledged at oral argument that such doodles were not admitted at trial and the only admitted journal entries were Exhibits 4 and 5, which were typewritten and contained the information we described above.

4

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized.

[¶14]   Because our constitution requires an affidavit, "we have held that sufficient factual support for issuance of the warrant must be found within the affidavit. . . . The affidavit must supply the issuing officer with sufficient information to make an independent judgment that probable cause exists for the warrant." *Bouch v. State*, 2006 WY 122, ¶ 13, 143 P.3d 643, 648 (Wyo. 2006) (citations omitted).  Bare conclusions of the affiant are not enough to establish probable cause to search.  *Id.  See also, Snell v. State*, 2014 WY 46, ¶ 13, 322 P.3d 38, 42 (Wyo. 2014) ("[I]t is necessary that the affidavit include some underlying facts, rather than bare conclusions of the affiant.").

[¶15]   "Probable cause to justify the issuance of a search warrant requires a twofold finding." *Snell*, ¶ 16, 322 P.3d at 44 (citing *Bouch*, ¶ 15, 143 P.3d at 648).  First, the affidavit must contain facts "'sufficient to cause a reasonably cautious or prudent person to believe that a crime was being committed or that one had been committed[.]'" *Mathewson v. State*, 2019 WY 36, ¶ 20, 438 P.3d 189, 200 (Wyo. 2019) (quoting *TJS*, ¶ 12, 113 P.3d at 1057).  "[S]econd, there must be an 'adequate showing that the fruits of the crime or the evidence thereof' are in the place to be searched." *Id*. (quoting *TJS*, ¶ 12, 113 P.3d at 1057).  We have described the second prong of the probable cause analysis "as requiring a 'nexus' between the contraband to be seized or the suspected criminal activity and the place to be searched. . . . It is 'necessary that there be established a sufficient nexus between (1) criminal activity, and (2) the things to be seized, and (3) the place to be searched.'" *Bouch*, ¶ 15, 143 P.3d at 648 (quoting *United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir. 1998), and Wayne R. LaFave, Search and Seizure § 3.7(d), at 412 (4th ed. 2004)).

[¶16]   When reviewing the sufficiency of a search warrant affidavit on appeal, we "consider the affidavit in its totality, interpreting it in a realistic and common sense manner to determine if it presents probable cause supporting the issuance of the warrant." *Fosen v. State*, 2017 WY 82, ¶ 13, 399 P.3d 613, 616 (Wyo. 2017) (citing *Snell*, ¶ 10, 322 P.3d at 41, *TJS*, ¶ 10, 113 P.3d at 1057, and *Rohda v. State*, 2006 WY 120, ¶¶ 3-4, 142 P.3d 1155, 1158 (Wyo. 2006)).   "Because there is a 'strong preference under the law for law enforcement officers to obtain a warrant instead of engaging in a warrantless search,' we begin with the presumption that the warrant and supporting affidavit are valid."  *Id*. (quoting *Schirber v. State*, 2006 WY 121, ¶ 5, 142 P.3d 1169, 1172 (Wyo. 2006)).  "We resolve doubtful or marginal cases by sustaining the search." *Id*. (citing *Bouch*, ¶ 6, 143 P.3d at 646, and *TJS*, ¶ 10, 113 P.3d at 1057).

5

[¶17]   In the affidavit in support of the search warrant, Detective Fischer explained he had twenty years of experience as a police officer and knew, based on his training and experience, "that evidence and records of criminal activity located as electronically stored information and media are often found in and/or through computers, cellular devices, media, [and] storage devices." He also averred "[he] ha[d] located such forms of evidence on other criminal investigations [and] [m]ore often than not, the evidence may come in the form of . . . documents, books, papers and other tangible objects and information to include but not limited to:   Books, *journals*, records, notes, ledgers, cellular telephones . . ., computers, tablets, thumb drives, and external hard drives." (Emphasis added).

[¶18]   Detective Fischer also described in detail Mr. Kreusel's statements on the date of his arrest for false imprisonment and Ms. Kreusel's allegations of sexual, physical, mental, and emotional abuse against Mr. Kreusel, including the alleged conduct forming the bases for the sexual assault counts for which Mr. Kreusel was eventually acquitted and the strangulation and false imprisonment incidents. Important here, Ms. Kreusel's allegations against Mr. Kreusel included an attempted choking incident on September 29, 2019, in Fort Collins, Colorado. Mr. Kreusel "was angry and came after [Ms. Kreusel] with both of his open hands extended in front of him as if [he] was going to choke [her]." Ms. Kreusel "screamed out of fear," and her sister and father intervened. Mr. Kreusel drove home to Green River separately from the rest of the family, and Ms. Kreusel and the children rode home with her father. After helping Ms. Kreusel change the locks on the doors to the parties' home, Ms. Kreusel's father told Mr. Kreusel "not to come back to the house . . . until he got into counseling and anger management classes."

[¶19]   Detective Fischer also described in the affidavit the information law enforcement obtained from Ms. Kreusel regarding Mr. Kreusel's journaling:

> a. Dana is aware that Kye keeps detailed journals on his cell phone, work computer and has several handwritten journals.
> b.   Dana has seen Kye "journaling" on his work computer when she has woken up during the night, mentioning the document had the date and time that he was journaling.
> c. Dana believes that Kye has been journaling more and in more detail since he started counseling in September of 2019.
> d. Dana knows that Kye is in possession of the journal items, as he picked them up during a civil standby after he bonded out of jail.
> e. Dana believes that Kye keeps the journals in his work bag, which is a saddle style canvas bag, which is a generic black canvas bag with a shoulder strap.

6

f. Dana is aware that Kye has had in his possession two (2) cellular telephones at a given time. Dana is unaware if both phones are operational at this time.

[¶20]   In conclusion, Detective Fischer stated:

> [B]ased on the information outlined in this Affidavit, which allege[s] [Ms. Kreusel] is the victim of Physical Abuse, Sexual Abuse, Mental Abuse and Emotional Abuse, your affiant believes that it is possible there is information stored in electronic[] devices including but not limited [to] computer(s), cellular telephones, or other digital devices that store[] information, in the form of journals which could corroborate some of the incidents that have taken place, and further that evidence of this crime could be located on said devices located either at [Mr. Kreusel's place of employment, in his vehicle,] or on [his] person . . . .

[¶21]   Mr. Kreusel does not dispute on appeal that the first prong of the probable cause analysis is satisfied, i.e., the affidavit contained sufficient facts allowing the circuit court magistrate to believe a crime had been committed. He argues, however, that the second prong was not met because nothing in the affidavit established a fair probability that evidence of a crime would be found in his journals. According to Mr. Kreusel, the sole basis given for Officer Fischer's belief that information pertaining to the crimes would be found in his journals was that Mr. Kreusel had a habit of journaling. However, without any allegations or assertions that he journaled about the crimes or any information regarding the content or subject matter of his journals, he maintains the affidavit failed to establish a sufficient nexus between the crimes and his journals.

[¶22]   As stated above, we begin with the presumption that the affidavit is valid. *Fosen*, ¶ 13, 399 P.3d at 616; *Schirber*, ¶ 5, 142 P.3d at 1172. We conclude the affidavit, considered in its entirety, contained sufficient facts showing a fair probability that evidence of a crime would be found in Mr. Kreusel's journals.

[¶23]   The affidavit stated that in Detective Fischer's twenty years of experience, he had located evidence of criminal activity on computers, cellular devices, and other storage devices and "more often than not, the evidence may come in the form of . . . journals." It also described Ms. Kreusel's knowledge regarding Mr. Kreusel's journals. That knowledge included that Mr. Kreusel kept journals on his cell phone, on his work computer, and in handwritten journals; those journals were "detailed" and included the date and time of the journaling; and he even journaled at night. These facts demonstrate Mr. Kreusel had a habit of keeping detailed journals. The affidavit also established a nexus between Mr. Kreusel's detailed journals and the alleged crimes (domestic violence). It

stated Ms. Kreusel believed Mr. Kreusel began journaling more frequently and in more detail since he started counseling in September 2019. According to the affidavit, Mr. Kreusel began counseling in September 2019 after a domestic violence incident witnessed by Ms. Kreusel's father and sister in which Mr. Kreusel approached Ms. Kreusel as if he was going to choke her. The affidavit established that Mr. Kreusel was required to attend this counseling as a condition of being allowed back into the parties' home following the domestic violence incident. A reasonable inference from these facts is that the increased journaling was related to his counseling which, in turn, was related to his domestic violence toward Ms. Kreusel. As a result, there was a reasonable probability that Mr. Kreusel's journals would contain evidence of domestic violence.

[¶24] Relying on our decision in *Bouch*, Mr. Kreusel argues the necessary nexus between the criminal activity and the place to be searched cannot be inferred. In *Bouch,* an officer received reports that Mr. Bouch had molested his four daughters. *Bouch*, ¶ 7, 143 P.3d at 646. He obtained a warrant to search 233 North 6th Street in Douglas, Wyoming, for, *inter alia*, notes, letters, photographs, and Mr. Bouch. *Id.*, ¶¶ 7, 12, 143 P.3d at 646-47. We concluded the affidavit in support of the search warrant "failed to establish the required nexus between the crime, or the evidence thereof, and the location to be searched" because there was "nothing within the affidavit that connect[ed] notes, letters, photographs, or Mr. Bouch, to 233 North 6th Street" or indicated why the officer believed such evidence would be located at that address. *Id.*, ¶¶ 18-19, 143 P.3d at 649. The affidavit did not identify the address "as Mr. Bouch's residence, the place where his daughters reside[d], or as a place having any connection to Mr. Bouch or the alleged crime." *Id.*, ¶ 20, 143 P.3d at 649-50. Indeed, the only mention of 233 North 6th Street in the affidavit was in the request to search it. *Id.*, ¶ 24, 143 P.3d at 651. Contrary to Mr. Kreusel's argument, we did not say in *Bouch* that the required nexus cannot be inferred. Rather, we rejected the State's argument that the required nexus could be inferred from the affidavit in that case because "permissible inferences must arise from facts appearing in the affidavit" and there were no facts in the affidavit supporting such inference. *Id.*, ¶¶ 20-22, 143 P.3d at 651-52. In this case, by contrast, the affidavit contained sufficient facts to infer that evidence of the crimes would be found in Mr. Kreusel's journals, namely, he kept "detailed" journals, his journaling increased and became more detailed after he started counseling, and he began that counseling because he attempted to choke Ms. Kreusel. These facts support a reasonable inference that Mr. Kreusel's journals would contain evidence of domestic violence.

[¶25] We emphasize that the mere fact a defendant has a known habit of journaling does not, on its own, establish that evidence of a crime will be found in the defendant's journals, thereby justifying their search. In this case, however, as we just explained, the affidavit contained more than the fact that Mr. Kreusel had a habit of journaling.

[¶26] Because the affidavit contained sufficient facts for the circuit court magistrate to find the requisite nexus between the suspected criminal activity and Mr. Kreusel's journals, the district court did not err by denying Mr. Kreusel's motion to suppress.

### B. Sentencing

[¶27]  At sentencing, the district court informed Mr. Kreusel that it could "go beyond the record to consider your past conduct and activities, including evidence of crimes for which charges were filed but no conviction resulted.  The scope of the inquiry can include the factual basis of the dismissed charges, as well as hearsay reports implicating you in other crimes if such reports are deemed sufficiently reliable."  In imposing sentence, the court stated:

> I think your prior conduct, the conduct that led to the other three charges for which you were acquitted give[s] context to . . . these two charges, to both the False Imprisonment and the Strangulation.  They exemplify your controlling nature in this relationship.

[¶28]  In his brief, Mr. Kreusel maintains the district court erred at sentencing by considering the conduct for which he was acquitted without first making a finding as to whether the conduct had been proven by a preponderance of the evidence.  While he does not ask us to abolish the practice of using facts related to other alleged crimes to determine a sentence, he argues we "should reinforce the requirements of [*United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997),] by requiring a specific finding that the [preponderance of the evidence] burden of proof has been met before acquitted conduct can be used for the purposes of sentencing."  At oral argument, however, he more broadly argued a district court should be prohibited from considering at sentencing conduct for which a defendant has been acquitted, regardless of whether or not the conduct has been shown to have occurred by a preponderance of the evidence.

[¶29]  The State claims our review of this issue is for plain error because Mr. Kreusel did not object to the court's comments at sentencing.  *See Jewkes v. State*, 2022 WY 90, ¶ 7 , 513 P.3d 154, 158 (Wyo. 2022) (reviewing for plain error whether the district court's comments at sentencing violated the defendant's constitutional rights because the defendant did not object in the district court) (citations omitted).  In his brief, Mr. Kreusel maintains our standard of review is for abuse of discretion but, at oral argument, he agreed with the State that plain error review applies.

[¶30]  Mr. Kreusel did not lodge a contemporaneous objection to the district court's consideration of the acquitted conduct.  Nor did he ask the district court to make a finding that the acquitted conduct had been proven by a preponderance of the evidence prior to the court considering it at sentencing.  However, at the outset of the sentencing hearing, defense counsel noted that the Presentence Investigative Report (PSIR) was prepared prior to Mr. Kreusel being acquitted of the three first-degree sexual assault charges and asked the court not to consider the sexual assault charges because Mr. Kreusel had been acquitted

9

of them. We need not decide whether this request sufficiently preserved Mr. Kreusel's arguments for appeal. Even applying the "more rigorous" abuse of discretion standard, we see no abuse of discretion. *See Gilbert v. State*, 2022 WY 62, ¶ 37 n.3, 509 P.3d 928, 938 n.3 (Wyo. 2022). *See also, Kelley v. State*, 2009 WY 3, ¶ 7, 199 P.3d 521, 523 (Wyo. 2009) ("Sentencing decisions generally are subject to review for an abuse of discretion." (citing *Smith v. State*, 941 P.2d 749, 750 (Wyo. 1997))).

[¶31] "When imposing sentence, the trial court is given broad discretion to consider a wide variety of factors about the defendant and his crimes." *Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo. 2004) (citing *Mehring v. State*, 860 P.2d 1101, 1115 (Wyo. 1993), and *Griebel v. State*, 763 P.2d 475, 477 (Wyo. 1988)). Those factors include the crime and its attendant circumstances, victim impact statements, the PSIR, the defendant's character, and his remorse for his actions. *Deeds v. State*, 2014 WY 124, ¶ 22, 335 P.3d 473, 479-80 (Wyo. 2014) (citation omitted); *Noel v. State*, 2014 WY 30, ¶ 42, 319 P.3d 134, 147-48 (Wyo. 2014) (citations omitted). Wyoming Rule of Criminal Procedure 32(a)(2)(A) also "specifically permits information about the defendant's prior criminal record and his characteristics to be considered by the trial court before imposing sentence." *Mehring*, 860 P.2d at 1116. Relevant here, we have held "[e]vidence of prior criminal activity is 'highly relevant to the sentencing decision' and may *be considered by the sentencing court despite the fact that no prosecution or conviction may have resulted*." *Manes*, ¶ 9, 92 P.3d at 292 (citing *Mehring*, 860 P.2d at 1117) (emphasis added). *See also, Hirsch v. State*, 2006 WY 66, ¶ 31, 135 P.3d 586, 598 (Wyo. 2006).

[¶32] In this case, the district court did not find that Mr. Kreusel committed first-degree sexual assault. Rather, it stated the conduct surrounding the sexual assault charges provided context to Mr. Kreusel's strangulation and false imprisonment convictions, namely, the conduct showed his "controlling nature" in the parties' relationship. A defendant's controlling nature is not an element of first-degree sexual assault. *See* § 6-2-302(a)(i), (iii). However, the fact that Mr. Kreusel exercised such control over Ms. Kreusel in their relationship speaks directly to his character and the seriousness of his offenses, namely strangulation.

[¶33] The district court noted that during trial Mr. Kreusel presented himself "as the victim, as the person being controlled." During sentencing, defense counsel argued that although Mr. Kreusel "did strangle [Ms. Kreusel], and the conduct is inexcusable," it was an "isolated incident" in which Mr. Kreusel was "not trying to control [Ms. Kreusel] as a person" but rather he "wanted to control the situation." As the district court aptly observed, the conduct surrounding the first-degree sexual assault charges showed Mr. Kreusel was "clearly" not the victim and "clearly" not the person being controlled. "[He was] the dominant person in [the parties'] sex life" and in their family, and "Ms. Kreusel was subservient to [him]." The court then tied that "control" into the seriousness of the strangulation conviction:

10

In the particular charge that the Court is faced with today, I found it interesting that you testified that you, in fact, had even . . . discussed the idea of putting your hands on Ms. Kreusel to end an argument. That's so cruel, so difficult to understand, but [its] [an]other example[] of your domination of Ms. Kreusel. Strangulation . . . is an incredibly serious charge . . . and [it is] especially serious when [it] happen[s] to someone that you are in a committed relationship with.

The court properly considered the acquitted conduct as relevant to Mr. Kreusel's character and the seriousness of his crimes. *Deeds*, ¶ 22, 335 P.3d at 479-80; *Noel*, ¶ 42, 319 P.3d at 147-48.

[¶34] Mr. Kreusel relies on *Watts* for the proposition that a sentencing court must make a specific finding that the acquitted conduct was proven by a preponderance of the evidence prior to considering it at sentencing. In *Watts*, the United States Supreme Court held "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Watts*, 519 U.S. at 157, 117 S.Ct. at 638. The Court explained:

> "[A]cquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984). As then-Chief Judge Wallace pointed out in his dissent in [*United States v.*] *Putra*, [78 F.3d 1386 (9ᵗʰ Cir. 1996)], it is impossible to know exactly why a jury found a defendant not guilty on a certain charge.
>
>> "[A]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt. Without specific jury findings, no one can logically or realistically draw any factual finding inferences. . . ." 78 F.3d, at 1394.

*Id.*, 519 U.S. at 155; 117 S.Ct. at 637. The *Watts* Court specifically held a sentencing court may consider acquitted conduct so long as it is proved by a preponderance of the evidence. However, it did not hold that a court must explicitly state that it found the conduct occurred by a preponderance of the evidence before it may rely upon it at sentencing.

[¶35]   Mr. Kreusel provides no Wyoming authority requiring a sentencing court to make a specific finding that acquitted conduct occurred by a preponderance of the evidence prior to considering it at sentencing and we have uncovered none.   We have recognized, however, that a "sentencing decision cannot be based upon unreliable information, undocumented information, or inaccurate information. . . . [D]ue process provides a right to be sentenced only on accurate information." *Jewkes*, ¶ 20, 513 P.3d at 161 (emphasis, citations, and quotation marks omitted).   *See also, Frederick v. State*, 2007 WY 27, ¶ 26, 151 P.3d 1136, 1145 (Wyo. 2007) ("Due process requires that sentence be imposed only on accurate information." (citing *Manes*, ¶ 9, 92 P.3d at 292)).   Mr. Kreusel does not challenge the reliability or accuracy of the evidence relied upon by the district court concerning his acquitted conduct or claim that the court did not find that the conduct occurred by a preponderance of the evidence.   He challenges only the district court's use of the acquitted conduct as a factor in sentencing without first making a specific finding that it was proven by a preponderance of the evidence.   *Frederick*, ¶ 26, 151 P.3d at 1145 ("Frederick does not challenge the accuracy of the evidence, only that it was a factor in sentencing.").   As we explained above, we allow sentencing courts to consider "[e]vidence of [a defendant's] prior criminal activity . . . *despite the fact that no prosecution or conviction may have resulted*" and have never required a sentencing court to make a specific finding that such evidence has been proven by a preponderance of the evidence before it may consider it.   *Manes*, ¶ 9, 92 P.3d at 292 (citing *Mehring*, 860 P.2d at 1117) (emphasis added).

[¶36]   Finally, Mr. Kreusel relies on the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), to support his argument that a sentencing court should be prohibited from considering acquitted conduct without a finding it was proven by a preponderance of the evidence.   In *Apprendi*, the Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362-63 (emphasis added). In *Alleyne*, the Court extended the reasoning of *Apprendi* to facts which increase the mandatory minimum sentence for a crime and held those facts must also be submitted to a jury and proved beyond a reasonable doubt.   *Alleyne*, 570 U.S. at 102, 133 S.Ct. at 2155. Neither *Apprendi* nor *Alleyne* are applicable here because the acquitted conduct did not increase the statutory maximums or mandatory minimums of Mr. Kreusel's crimes.

[¶37]   The district court did not abuse its discretion by considering the acquitted conduct at sentencing.

## CONCLUSION

[¶38]   Because the affidavit in support of the search warrant established probable cause to search and seize Mr. Kreusel's journals, the district court did not err by denying Mr.

Kreusel's motion to suppress his journals. The district court did not abuse its discretion at sentencing by considering conduct for which Mr. Kreusel was acquitted.

[¶39]   Affirmed.