# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 14

OCTOBER TERM, A.D. 2025

January 23, 2026

CHAD EVERETTE URRUTIA,

Appellant
(Defendant),

v.                                                                    S-25-0126

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Matthew F.G. Castano, Judge

*Representing Appellant:*
> Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

*Representing Appellee:*
> Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Leanne J. Johnston, Assistant Attorney General. Argument by Ms. Johnston.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]   Chad Urrutia entered a conditional guilty plea to a single count of possession of methamphetamine.  The charge stemmed from the search of a single-wide trailer Mr. Urrutia lived in with two other occupants.  During the search, police found methamphetamine and drug paraphernalia in a bench located in Mr. Urrutia's bedroom.

[¶2]   On appeal, Mr. Urrutia asserts the district court erred in denying his motion to suppress the evidence found during the search.  Specifically, he argues law enforcement omitted material facts from the search warrant affidavit for the home.  Mr. Urrutia maintains if these facts had been included in the affidavit, law enforcement would not have had probable cause to search his bedroom.  Finding no error, we affirm.

## ISSUE

[¶3]   Mr. Urrutia asserts a single issue, which we rephrase as follows:

Did the district court err in denying Mr. Urrutia's motion to suppress?

## FACTS AND PROCEEDINGS

**The First Search Warrant**

[¶4]   On the morning of August 20, 2024, Detective Brian Roesner with the Gillette Police Department executed a search warrant at a mobile home in Gillette, Wyoming.  That search warrant (first search warrant) was for the collection of evidence at 511 S. Brooks Avenue in support of a sexual assault investigation into M.M., a resident in the home.  While collecting a bed sheet in M.M.'s bedroom, Detective Roesner discovered a glass pipe coated with what he believed was methamphetamine residue.

[¶5]   M.M. and two other residents, Mr. Urrutia and his mother, were in the living room during the first search.  Detective Roesner approached M.M. with the pipe and M.M. reportedly responded by dropping his head and exclaiming something to the effect of, "Oh s**t."  When asked if any other drugs were in his room, M.M. responded officers might find prescription drugs he discovered in trash cans.

[¶6]   Detective Roesner advised the residents of their Miranda rights and asked if any other drugs were present in the home.  Mr. Urrutia "chuckled" but denied having any drugs.  Mr. Urrutia's mother also denied having any drugs in the home.  With the discovery of the pipe in M.M.'s bedroom, Detective Roesner then informed M.M. he was going to apply for a second search warrant for controlled substances.

1

**The Second Search Warrant and Affidavit**

[¶7]    Detective Roesner prepared an affidavit to support a second search warrant that same day.  The affidavit described the location as "511 S. Brooks Ave., Gillette, WY 82716" and as a "gray single wide residence with purplish trim and bricks around the bottom and with a mail box in front facing Brooks Ave. with gold 511 numbers on it."  In the second affidavit, Detective Roesner stated he was investigating the crime of "possession of a controlled substance" and he expected to find evidence of "[c]ontrolled substances including but not limited to Methamphetamine, Marijuana, Cocaine, Heroin, Fentanyl, Psilocybin mushrooms, paraphernalia, scales, currency, safes, [and] packaging materials."  Detective Roesner provided the following probable cause narrative:

> On 08/20/2024 at approximately 1027 hours, I served a warrant at 511 S. Brooks Ave. for collection of evidence in a sexual assault investigation. While collecting bed sheets from the bed I observed a glass pipe completely coated with white residue.
>
> I know this to be a methamphetamine pipe based on my 17 years of experience in law enforcement, approximately 4 years as a drug detection K9 handler and various drug investigation and identification classes I have attended.
>
> There are 2 other residents in the house other than the suspect. They were advised of Miranda Rights and denied any drugs in the house. The suspect [M.M.] also denied other drugs, other than possibly prescriptions he removed from trash cans.
>
> Based on this information, I am requesting a warrant to search 511 S. Brooks Ave. for controlled substances.

Relying on this affidavit, the district court then issued a search warrant for the residence.

[¶8]    Detective Roesner returned to the mobile home a few hours later to execute the second search warrant.  With the assistance of a K-9, law enforcement discovered "various pipes with methamphetamine, a baggie with an [sic] unknown blue, broken up pills, and various baggies and a container with methamphetamine" concealed within a bench in Mr. Urrutia's bedroom.  Field tests of the containers returned presumptive positive results for methamphetamine and THC.

[¶9]    Mr. Urrutia was advised of his rights, stated the items discovered were from his storage unit and that he intended to discard them, and was arrested for possession of a controlled substance.

2

**District Court Proceedings**

[¶10]  The State charged Mr. Urrutia with felony possession of a controlled substance — methamphetamine (crystalline form), in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii) (2025).  After pleading not guilty, Mr. Urrutia filed a motion to suppress evidence and requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (*Franks* hearing).

[¶11]  In his motion, Mr. Urrutia argued Detective Roesner omitted material facts in the second search warrant affidavit, which if included, would have resulted in an insufficient basis to support probable cause for a valid search warrant.  He maintained Detective Roesner omitted that the first pipe with methamphetamine residue was discovered in M.M.'s bedroom which was secured with plywood and a padlock.  He also claimed Detective Roesner failed to identify whether M.M. owned the mobile home or was a tenant and failed to explain the living arrangements in the house.

[¶12]  The district court held a hearing on the motion where the parties clarified from the outset that Mr. Urrutia was only challenging the alleged omissions in the second search warrant affidavit.  Detective Roesner testified about the execution of the first search warrant, his discovery of the pipe in M.M.'s bedroom, and his questioning of the three residents.  This testimony included Detective Roesner's observations inside the home and his initial encounter with Mr. Urrutia and Mr. Urrutia's mother before searching M.M.'s bedroom.  In that initial encounter, Detective Roesner met Mr. Urruita's mother, who appeared to reside on the couch in the living room.  She then directed Detective Roesner to Mr. Urrutia's bedroom located on the opposite side of the mobile home from M.M.'s bedroom.  There, Detective Roesner observed a curtain at the entrance to Mr. Urrutia's bedroom, with Mr. Urrutia sitting on a bed inside.

[¶13]  Detective Roesner also described his efforts to secure a second search warrant.  When confronted on cross-examination about certain alleged omissions in the second search warrant affidavit, Detective Roesner responded that the existence of the padlock on M.M.'s door "didn't really cross his mind as being a necessary fact" because he was focused on what he found during his initial search of the mobile home.  He also testified he did not include the fact that he found the methamphetamine pipe in M.M.'s room during the first search because he thought "it was evident" based upon the fact that M.M. was the suspect identified in the first affidavit.

[¶14]  After taking the matter under advisement, the district court denied the motion to suppress in a written order.  Although the district court acknowledged the affidavit for the second search warrant was "quite brief," it concluded the affidavit supporting the second search warrant established probable cause because Detective Roesner stated a pipe with methamphetamine residue had been discovered in the home and it was reasonable under the circumstances to conclude more controlled substances were in other places within the home.  In response to the *Franks* issue, the district court found inserting the omitted facts

3

into the second search warrant affidavit would lead to the conclusion that M.M. had access to the entirety of the home, whereas Mr. Urrutia and his mother were "blocked off" from M.M.'s bedroom. As a result, the court concluded, "[a]nyone in the home, such as M.M., could go into [Mr. Urrutia's] room and could, in doing so, place or store controlled substances in [Mr. Urrutia's] room."

[¶15] Pursuant to a conditional plea agreement, Mr. Urrutia later pled guilty to a single count of possession of a controlled substance — methamphetamine (crystalline form). As part of the agreement, Mr. Urrutia reserved the right to appeal the district court's denial of his motion to suppress. This appeal followed.

## STANDARD OF REVIEW

[¶16] When a court denies a motion to suppress after a combined *Franks* and suppression hearing, we review the court's factual findings for clear error on "whether information was omitted intentionally to make, or with reckless disregard to whether it made, the affidavit misleading." *Herdt v. State*, 2023 WY 42, ¶ 16, 528 P.3d 862, 866 (Wyo. 2023) (citing *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008); *Lefferdink v. State*, 2011 WY 75, ¶ 8, 250 P.3d 173, 175-76 (Wyo. 2011)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Marquez v. State*, 2025 WY 61, ¶ 47, 569 P.3d 356, 369 (Wyo. 2025) (quoting *Garcia v. State*, 2025 WY 17, ¶¶ 17-18, 563 P.3d 484, 492 (Wyo. 2025)). We also view the evidence in the light most favorable to the district court's determination since that court had the opportunity to assess witness credibility, weigh the evidence, and make any necessary inferences, deductions, and conclusions at the hearing. *Id.* (citations omitted). However, we review the ultimate determination regarding the constitutionality of a particular search de novo. *Kobielusz v. State*, 2024 WY 10, ¶ 30, 541 P.3d 1101, 1110 (Wyo. 2024) (citing *Clay v. State*, 2016 WY 55, ¶ 14, 372 P.3d 195, 197 (Wyo. 2016)).

## DISCUSSION

[¶17] Mr. Urrutia argues Detective Roesner recklessly omitted material facts from the second search warrant affidavit and, had the omitted facts been included, the affidavit considered in its totality would not establish probable cause. In particular, he claims Detective Roesner failed to expressly state that during the first search the suspected methamphetamine pipe was found in M.M.'s room and that, unlike the remainder of the residence, M.M.'s room was only accessible through a padlocked door.

[¶18] For a search warrant to be valid, all the circumstances explained in any supporting affidavit must provide the issuing judge a "substantial basis" to make an independent judgment that there is probable cause. *Herdt*, ¶ 13, 569 P.3d at 368 (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1983)) (other citation omitted). When we review an affidavit, "we

consider the affidavit in its totality, interpreting it in a realistic and common sense manner to determine if it presents probable cause supporting the issuance of the warrant." *Id.* (quoting *Kreusel v. State*, 2023 WY 9, ¶ 16, 523 P.3d 312, 317 (Wyo. 2023)). "[W]e begin with the presumption the warrant and supporting affidavit are valid" and "resolve doubtful or marginal cases by sustaining the search." *Id.* (citations omitted).

[¶19]   Under *Franks v. Delaware*:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155-56; *see also Lefferdink*, ¶ 9, 250 P.3d at 176 (quoting *Davis v. State*, 859 P.2d 89, 92-93 (Wyo. 1993)).  Innocent mistakes and even negligence are insufficient grounds to set aside misstatements.  *Davis*, 859 P.2d at 94 (citing *Franks*, 438 U.S. at 171).

[¶20]   The *Franks* rationale also applies to information recklessly or deliberately omitted from a search warrant affidavit, as alleged here.  *Herdt*, ¶ 15, 528 P.3d at 865-66 (citations omitted).  In such situations, a defendant must show "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, ... and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Id.* (citation omitted); *see also Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citation omitted); *Garcia-Zambrano*, 530 F.3d at 1254 (citations omitted).  Both requirements must be met.

[¶21]   Mr. Urrutia's appeal focuses almost exclusively on the second required showing from *Franks* — that the affidavit, if supplemented by the omitted information, would not have been sufficient to support a probable cause finding.  While his brief cites the law relevant to the first required showing — intentionality or reckless disregard by the officer — his brief contains only conclusory statements in that regard.  In short, Mr. Urrutia does not analyze that issue in any meaningful way.  Moreover, in its order on the motion to

suppress, the district court did not address Mr. Urrutia's assertion that Detective Roesner acted recklessly in omitting facts from the affidavit. Instead, the district court went straight to the second part of the *Franks* analysis and concluded that "if one were to insert [the omitted] information into the affidavit and then review that hypothetical revised affidavit [ ] the Court concludes that probable cause would remain to support a search warrant for the entire structure of the home." Because that issue is dispositive of Mr. Urrutia's appeal, we do not address the issue of whether Detective Roesner's omissions were intentional or reckless.

**The facts allegedly omitted from the second search warrant affidavit do not compromise the probable cause finding.**

[¶22] Mr. Urrutia argues adding the following facts omitted from the second search warrant affidavit would have defeated the probable cause finding: (1) the residence had more than one bedroom; (2) the suspected methamphetamine pipe was discovered in M.M.'s bedroom; (3) Mr. Urrutia presumably could not access M.M.'s bedroom; (4) Mr. Urrutia had his own bedroom (separated by a curtain); and (5) M.M. did not own the residence. The State argues that including these facts would not have defeated the probable cause determination because they confirmed M.M. had access to the entire residence. We agree with the State.

[¶23] "Probable cause to justify the issuance of a search warrant requires a twofold finding." *Kreusel*, ¶ 15, 523 P.3d at 316 (quoting *Snell v. State*, 2014 WY 46, ¶ 16, 322 P.3d 38, 44 (Wyo. 2014)). First, the affidavit must contain facts "sufficient to cause a reasonably cautious or prudent person to believe that a crime was being committed or that one had been committed." *Id.*, ¶ 15, 523 P.3d at 316-17 (quoting *Mathewson v. State*, 2019 WY 36, ¶ 20, 438 P.3d 189, 200 (Wyo. 2019)) (citation modified). Second, there must be an adequate showing that the fruits of the crime or the evidence thereof are in the place to be searched. *Id.* (citation modified). We have described the second prong of the probable cause analysis as requiring a nexus between the contraband to be seized or the suspected criminal activity and the place to be searched. The information in the search warrant and supporting affidavit must establish a sufficient nexus between (1) criminal activity, (2) the things to be seized, and (3) the place to be searched. *Id.* (citing *Bouch v. State*, 2006 WY 122, ¶ 15, 143 P.3d 643, 648 (Wyo. 2006)) (citation modified).

[¶24] Detective Roesner based his second search warrant affidavit on his observations while executing the first search warrant earlier that day. The Detective found what he believed was a methamphetamine pipe with residue while collecting bed sheets from a bed. He stated in his affidavit there were "[two] other residents in the house other than [M.M.]" and that after he Mirandized the two other residents they "denied any drugs in the house." M.M. also "denied other drugs, other than possibly prescriptions he removed from trash cans." Based on this information, Detective Roesner believed, and the district court agreed, that there was probable cause to search the entire residence for controlled substances. Mr.

6

Urrutia does not appear to dispute this conclusion; instead, he argues that had the additional information noted above been included in the affidavit, there would not have been probable cause to search the entire trailer home.

[¶25] Specifically, Mr. Urrutia argues if the affidavit had stated that the methamphetamine pipe was found in M.M.'s locked room, separate and apart from his own room, there would not have been a nexus between discovery of the pipe and a search of Mr. Urrutia's room. We disagree. After inserting the omitted facts into the affidavit, the affidavit would have clarified the mobile home had two bedrooms and Mr. Urrutia could not access M.M.'s room. It would have also clarified that, while Mr. Urrutia could not access M.M.'s room, *M.M. could access Mr. Urrutia's*, which was separated from the rest of the trailer by only a curtain. As we see it, the relevant inquiry is not what parts of the home Mr. Urrutia could access, but instead, what parts M.M. could access. *See Fosen v. State*, 2017 WY 82, ¶ 13, 399 P.3d 613, 616 (Wyo. 2017) (stating to establish probable cause "there must be an adequate showing that the fruits of the crime or evidence thereof are in the area or structure sought to be searched") (citations omitted). Based on that, the district court could reasonably conclude a nexus existed between the suspected criminal activity and Mr. Urrutia's room. In fact, considering the hypothetical affidavit in its totality, and interpreting it in a realistic and common-sense manner, the additional facts would arguably have *contributed* to probable cause, not defeated it. *See, e.g., Marquez*, ¶ 53, 569 P.3d 370.

[¶26] Mr. Urrutia, relying on *Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000), also argues Detective Roesner was required to establish probable cause to search each bedroom in the mobile home. But Mr. Urrutia's reliance on *Jacobs* in this case is misplaced. The dwelling in *Jacobs* involved an apartment block and applied a rule of law that jurisdiction uses for multi-unit buildings. *See Jacobs*, 215 P.3d at 767-68. In Wyoming, a search warrant affidavit can establish probable cause to search an entire single-family residence, including a mobile home, as long as the affidavit establishes a nexus "between the contraband to be seized or the suspected criminal activity and the place to be searched." *Kreusel*, ¶ 15, 523 P.3d at 317; *see also Bland v. State*, 803 P.2d 856, 858-60 (Wyo. 1990) (holding search warrant and accompanying affidavit for mobile home contained sufficient information to support the issuance of a search warrant). Here, and as Detective Roesner's second search warrant affidavit explained, the dwelling was "a single wide residence" with a single address on the mailbox. Put simply, *Jacobs* is not persuasive because the facts Detective Roesner attested to in the challenged affidavit, and the facts he allegedly omitted, do not remotely suggest the dwelling contained "separate, living arrangements" as Mr. Urrutia claims.

[¶27] At least one court decision indicates Mr. Urrutia would have a stronger challenge to the probable cause finding had he taken the same precautions as M.M. in securing his bedroom. *See Vermont v. Quigley*, 892 A.2d 211, 219-20 (Vt. 2005) (finding probable cause to search a multi-resident dwelling did not extend to defendant's locked bedroom based upon the discovery of marijuana in common area and another bedroom because law

7

enforcement did not establish the roommate could access the defendant's locked bedroom). This case, however, presents the opposite scenario. Accordingly, we find the facts Mr. Urrutia claims were omitted from the second search warrant affidavit do not change the probable cause determination for searching the entire mobile home.

## CONCLUSION

[¶28] When we review the record in the light most favorable to the district court's findings, as we are required to do, the record supports the denial of Mr. Urrutia's motion to suppress. Detective Roesner's description of the mobile home, and reason for conducting an additional search for controlled substances, is supported by the record. Specifically, the second search warrant affidavit described a single-family residence with multiple occupants where the discovery of a suspected methamphetamine pipe earlier that day justified the need for a second search warrant. The district court did not err when it concluded that a reasonably prudent person could conclude other controlled substances might be found in other places within the mobile home. The district court also did not err when it concluded the omitted facts would not have defeated probable cause, and instead, would have confirmed M.M. had access to the entirety of the home.

[¶29] Affirmed.